MACK TRUCKS OF ARKANSAS, INC. AND MACK TRUCKS, INC. v. JET ASPHALT AND ROCK CO., ET AL

5-4761                                    437 S.W. 2d 459

Opinion Delivered February 10, 1969

[Rehearing denied March 17, 1969.]

102

*Brown, Compton, Prewett & Dickens* for appellants.

*Crumpler, O'Connor, Wynne & Mays* for appellees.

JOHN A. FOGLEMAN, Justice.    Appellants seek relief from a judgment against them for $5,000 as damages for breach of implied warranty of fitness of two diesel truck engines.    Appellant Mack Trucks, Inc., is a manufacturer of trucks and diesel engines.    Appellant Mack Trucks of Arkansas, Inc. is a Mack truck dealer.

On or about September 13, 1965, a partnership of Haynie & Williams purchased two Mack diesel trucks from the dealer.    The purchase was made on special

order, after the partners had specified the work on which the trucks would be used and certain requirements necessary in the prosecution of their business of operating a gravel plant and an asphalt plant. Diesel engines were specifically required by the purchaser. The trucks were built by the manufacturer after the order for them had been given by the purchasers. They were delivered in January 1966. No warranty was mentioned in the purchase order signed by the dealer and the purchasers.

Haynie & Williams operated the trucks until February 1, 1966, when one of them was sold to Edwin B. Alderson, Jr. and Mary Jane Alderson and the other to Edwin B. Alderson, Jr. and Alan K. Alderson, the sons and daughter-in-law of Boyd Alderson, a stockholder of appellee Jet Asphalt & Rock Co., a domestic corporation. Subsequently, but during the same month, the other assets and business of the partnership were sold to Jet. One of the partners in Haynie & Williams is a stockholder in Jet and was retained at the time of the sale to operate the corporation. He became president about three months after the sale. The Aldersons leased the trucks to Jet after their purchase.

Minor trouble with power steering and rocker arms which developed while the trucks were operated by the partnership was readily corrected by the dealer. After the lease of the equipment, Jet complained to the dealer of oil leakage and excessive oil consumption by both units. Jet claimed that clutch trouble resulted making the trucks difficult to operate. Despite numerous repairs by the dealer, Jet remained unsatisfied. Most of the invoices for repairs were to Haynie & Williams, but at least two were to Jet. Each invoice showed allocation of the major part of the cost to "Warranty" and the remainder to "Customer." Efforts of representatives of Jet, the dealer, and the manufacturer to agree on a satisfactory course of action resulted in failure. Over the protest of appellants, Jet purchased diesel

units for both of the trucks from another manufacturer and caused the Mack units to be delivered to the Mack dealer. After appellants refused the demand of Jet for reimbursement of its cost of replacing the diesel units, Jet brought this action in Union County against both the manufacturer and dealer.

In its complaint, Jet alleged that Mack Trucks, Inc. is a foreign corporation authorized to do business in Arkansas and that Mack Trucks of Arkansas, Inc. is a domestic corporation with its principal office and place of business in Pulaski County. The cause of action was based upon alleged breach of an express warranty exhibited with the complaint and of an implied warranty of fitness for the purpose for which the trucks were sold. Jet sought recovery of $6,500, the cost of replacement of the engines, alleging that the value of each truck was $4,325 less at time of delivery than it would have been if they had been in good working order when delivered.

Summons was served upon both appellants in Pulaski County. They questioned jurisdiction of the person[1] and of the subject matter by a demurrer which was overruled. Thereafter, appellants filed an answer and supplemental answer. The Aldersons intervened before trial, adopting and ratifying Jet Asphalt's pleadings.

Just prior to the beginning of the trial appellants renewed their demurrer to jurisdiction and venue, which was again overruled. No evidence was ever offered by either party on this question.

Appellants first contend that there was error in permitting this suit to be maintained in Union County, claiming that neither of them had its principal office or place of business in Union County and that the chief officer of neither resided in that county.

[1]While this was the expression used in the demurrer, the appellants actually challenged venue.

Ark. Stat. Ann. § 27-605 (Repl. 1962) provides that an action may be brought against a corporation created by the laws of this state in the county in which it is situated or has its principal office or place of business or where its chief officer resides. Ark. Stat. Ann. § 27-608 permits an action to be brought against a foreign corporation in any county where there may be property or debts owing to it. Ark. Stat. Ann. § 27-613 permits the bringing of actions for which the venue is not otherwise specified in any county in which one of several defendants resides or is summoned. Corporations come within the terms of these sections as defendants or persons. *Harger* v. *Oklahoma Gas & Electric Co.*, 195 Ark. 107, 111 S.W. 2d 485. There is nothing to indicate where the domestic corporation is situated, nor is there anything to indicate where its chief officer resides. This corporation, for all that appears in the record might have been sued in any one of three counties. *Spratley* v. *Louisiana & Arkansas Ry. Co.*, 77 Ark. 412, 95 S.W. 776 (on rehearing); *Duncan Lumber Co.* v. *Blalock*, 171 Ark. 397, 284 S.W. 15. The foreign corporation could properly be sued in Union County if it had any property there or if there were debts in Union County owing to it. Nothing in the record indicates whether or not this is the case. Generally, where venue is questioned, there must be a determination on the facts. *Belford* v. *Taylor*, 241 Ark. 220, 406 S.W. 2d 868. Unless the pleadings on their face show that an action was commenced in the wrong county, a defendant objecting to the venue has the burden of proving the essential facts. 92 C.J.S. 772, § 74; *Tribune Company* v. *Approved Personnel, Inc.*, 115 S. 2d 170 (Fla. 1959); *Cohen* v. *Commodity Credit Corp.*, 172 F. Supp. 803 (W.D. Ark. 1959); *Werner* v. *Braunstein*, 20 Misc. Rep. 341, 45 N.Y.S. 757. Since appellants failed to offer any evidence on these critical points, and the record is silent otherwise, we find no merit in this contention. In this connection, it is significant that appellant Mack Trucks, Inc. failed to answer interrogatories propounded by Jet which pertain to some of these facts.

Furthermore, appellants jointly filed an answer and supplemental answer in neither of which were their special appearances or objections to venue preserved in any way. This constituted a waiver of the objections to venue. *Williams v. Montgomery*, 179 Ark. 611, 17 S.W. 2d 875; *Chicago R.I. & P. Ry. Co. v. Jaber*, 85 Ark. 232, 107 S.W. 1170.

Appellants' next contention is that the circuit court should have granted their motions for directed verdict because of lack of privity. They contend that appellees are barred from recovery for breach of warranty because neither the Aldersons nor Jet was in privity of contract with either of the appellants.

Act 35 of 1965 [Ark. Stat. Ann. § 85-2-318.1 (Supp. 1967)] eliminated lack of privity as a defense in *any* action brought against the manufacturer or seller of goods for breach of warranty, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume or be affected by the goods. Appellant argues that this act has no application in cases which do not involve injury or damage to persons or property. Unlike appellant, we are unable to find any language in the act or its title suggesting such a restrictive application of the act. The identical act has been adopted in Virginia. Va. Code Ann. § 8.2-318 (Additional Vol. 1965). We know of no decision under any such statute relating to its application to economic or commercial losses. The only cases arising under a similar act of which we know are cases involving personal injuries or property damage (see e.g. *Brockett v. Harrell Bros., Inc.*, 206 Va. 457, 143 S.E. 2d 897). Yet, we know of no suggestion by any court that the effect of the statute is limited to these cases. We do not know of any logical reason why the effect should be so limited. If any such reason had occurred to the General Assembly, no doubt there would be limiting language in the act. In the absence of such language, we must, and do, presume that our legislative branch

meant literally what it said. In so saying, it was following the present trend to shift the emphasis in breach of warranty cases from privity, or lack of it, to foreseeability. The Virginia court said that the obvious purpose of the statute was to insure the implied warranty of fitness by the manufacturer to the consumer despite the lack of privity between the two. (*Brockett* v. *Harrell*, supra.) The statutory purpose is the same as to anyone who it might reasonably be foreseen would be a user of goods manufactured or sold. The intention to permit a second purchaser or even a lessee from a purchaser to recover for breach of warranty seems implicit in the language providing that lack of privity should not be a defense "although the plaintiff did not purchase the goods from the defendant." This is not to say that every remote purchaser or user could recover for a breach of implied warranty of fitness for the purpose. Whether it was reasonably foreseeable that such a one would use the product would usually become a question of fact. Here, however, the sale and lease took place approximately one month after the original sale. Repairs were made over a period of months upon the complaints of Jet. Under these circumstances the trial court's holding, as a matter of law, that lack of privity was not a defense, was correct.

Appellants also argue that the circuit court erred in instructing the jury not to consider the express warranties exhibited with appellees' complaint and later introduced in evidence by them. As a part of this contention they allege error by the court in refusing to give their requested instructions which incorporated limitations expressed in those warranties. The first such instruction would have told the jury that they could consider only the express warranty. The other would have required the jury to disregard any warranty if they found the trucks were operated at a speed in excess of the factory rated speed.

Actually, appellants could not be prejudiced by the elimination of their potential liability on an express

warranty, except for the limitations thereby imposed. Exclusions or modifications of the implied warranty of fitness existing by virtue of Ark. Stat. Ann. § 85-2-315, which appear in the body of a warranty are not effective unless they are conspicuous. Ark. Stat. Ann. § 85-2-316 (2). The trial court had previously instructed appellants not to refer to certain of the limitations involved at the close of appellees' case because of their lack of conspicuity. We do not understand appellants' argument that these disclaimers are conspicuous. They are the same size type as the express warranty. The only part of either warranty which can be said to be conspicuous is the title—"Vehicle Warranty" and "Supplement to Mack Standard Warranty applicable to Mack Diesel Engines." Nothing in either of these titles suggests the content of exclusions or modifications of the implied warranty. According to Ark. Stat. Ann. § 85-1-201, a term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. See Comment to Uniform Commercial Code; *Minikes* v. *Admiral Corp.*, 266 N.Y.S. 2d 461 (1966). While Haynie testified that he was sure that he went over the warranties at the time the trucks were bought, he failed to respond to an inquiry as to whether he familiarized himself with the terms and conditions of the warranty and he could not recall definitely that the warranty was to repair defective parts. It was stipulated that the written warranties were delivered when the trucks were delivered.

The requirement that an exclusion or modification of implied warranties be conspicuous is to insure that attention of the buyer can reasonably be expected to be brought to it. Comment to UCC, Ark. Stat. Ann. § 85-1-201. Such an attempted disclaimer is ineffective, as a matter of law, and fails of its purpose when it is in the body of an instrument and in type of the same size and color as other provisions. *Boeing Airplane Company* v. *O'Malley*, 329 F. 2d 585 (8th Cir. 1964); *SFC Acceptance Corp.* v. *Ferree*, 39 Pa. D. & C. 2d 225. We have

indicated that a similar attempted limitation is ineffectual as a matter of law. *Sawyer* v. *Pioneer Leasing Corp.,* 244 Ark. 943, 428 S.W. 2d 46, 5 UCC 453.

This attempted disclaimer or limitation is ineffective for another reason. The very purpose of the statutory requirement is that any limitation be brought to the attention of the buyer at the time the contract is made. An attempted limitation at the time of delivery long after a contract of purchase is signed does not accomplish this purpose, being a unilateral attempt of a party to limit its obligations. *Zabriskie Chevrolet, Inc.* v. *Smith,* 99 N.J. Super. 441, 240 A. 2d 195, 5 UCC Rep. Svc. 30 (1968); *Admiral Oasis Hotel Corp.* v. *Home Gas Industries, Inc.,* 68 Ill. App. 2d 297, 216 N.E. 2d 282, 3 UCC Rep. Svc. 531. See also *Hunt* v. *Perkins Machinery Co.,* 352 Mass. 535, 226 N.E. 2d 228 (1967).

The circuit judge's holding that there was an implied warranty of fitness for the purpose for which the trucks were bought under the circumstances existing here was not erroneous.

The judgment is affirmed.