EQUIPMENT SUPPLY COMPANY *v.* CLAUD
AUSTIN SMITH, D/B/A SMITH TIRE COMPANY
AND McCREARY TIRE AND RUBBER COMPANY
*v.* FRIEND TIRE SERVICE, INC.

73-110                                    502 S.W. 2d 467

Opinion delivered December 10, 1973
[Rehearing denied January 14, 1974.]

*Putman, Davis & Bassett,* for appellant.

*Warner, Warner, Ragon & Smith* and *Jones & Segers,*
for appellees.

J. FRED JONES, Justice. This is an appeal by Equip-
ment Supply Company from an adverse judgment entered
on a jury verdict in a suit filed by Equipment Supply
against Claud Austin Smith, d/b/a Smith Tire Company,
and McCreary Tire and Rubber Company. Smith cross-
complained against McCreary and made Friend Tire Ser-
vice, Inc. a third party defendant.

Equipment Supply Company was a domestic corporation with headquarters in Springdale, Arkansas, and T. J. Neff was its president and general manager. Equipment Supply owned and operated several motor tractor-trailer rigs in hauling produce interstate. Claud Austin Smith did business as Smith Tire Company in Springdale, and sold truck tires including McCreary brand tires. McCreary Tire and Rubber Company was a corporation domiciled in Pennsylvania and manufactured McCreary tires at its plant in that state. It distributed its tires through wholesale outlets in the various states but had no distributor in Arkansas. Friend Tire Service was domiciled in Missouri. It distributed the McCreary tires through its store in that state and Smith purchased McCreary tires from Friend.

In October, 1969, Equipment Supply purchased ten McCreary tires from Smith and mounted two of them on the front, or steering axle, wheels of one of its trucks. On September 11, 1970, after the truck had been driven approximately 70,000 miles, the right front tire blew out causing the truck to leave the highway and resulting in considerable damage to the truck and trailer as well as to its cargo of frozen fish.

Equipment Supply filed suit against Smith and McCreary on express and implied warranties alleging that Smith had expressly warranted the tires as being suitable for over the road use on trucks and trailers, and impliedly warranted that they were of merchantable quality and fit for the ordinary purpose for which they were sold. Equipment Supply further alleged that Smith and McCreary knew the purpose for which the tires were to be used and that Equipment Supply relied upon their skill and judgment in furnishing suitable tires for the known purpose.

By answers, counterclaims, cross-complaints and answers thereto, the issues were finally joined with Equipment Supply praying damages against Smith and McCreary; with Smith praying judgment against McCreary for any amount adjudged against Smith; with McCreary praying judgment against Smith for contribution on any amount adjudged against McCreary; with Smith praying judgment against Friend for any amount adjudged

against Smith on implied warranty, and with Friend praying judgment over against McCreary for any amount adjudged against Friend in favor of Smith.

The trial court granted summary judgments for Smith and Friend as to the alleged express warranties but denied their motions for summary judgments as to implied warranties, and the case proceeded to trial on implied warranties. At the close of the plaintiff's evidence, the trial court granted motions by Smith and Friend for directed verdicts and the cause against McCreary was submitted to the jury. The jury rendered its verdict in favor of McCreary and judgment was entered thereon. On appeal to this court Equipment Supply designated the points it relies on for reversal as follows:

"The trial court erred in directing a verdict for the defendant and cross-appellant, Claud Austin Smith, d/b/a Smith Tire Company.

A. Implied Warranty of Merchantability.
B. Implied Warranty of Fitness for a Particular Purpose.

The trial court erred in limiting the proof of consequential damages pertaining to lost profits to the sum of $3,500.00.

The trial court erred in submitting a special interrogatory to the jury requiring a finding that the defendant McCreary Tire and Rubber Company defectively manufactured the tire in question."

Equipment Supply's first assignment has given us the most difficulty but having resolved that point in favor of Smith, it follows that under the facts and the evidence of record, the trial court did not commit reversible error on the other two points designated. The *express* warranties alleged in the original complaint filed by Equipment Supply were disposed of on summary judgment and there is no appeal from that disposition. Implied warranties are controlled by the Uniform Commercial Code on Sales, Ark. Stat. Ann. §§ 85-2-101, et seq., and in so far as it applies to the case at bar, §§ 85-2-314—85-2-315 (Add. 1961) provides as follows:

"§ 85-2-314-(1) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

(2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; * * *

(3) Unless excluded or modified . . . other implied warranties may arise from course of dealing or usage of trade.

§ 85-2-315 Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

In Smith's cross-complaint against McCreary and in McCreary's answer and counterclaim against Smith, they both alleged that if they were liable in damages, it would be caused by the defalcation or the negligence of the other.

Equipment Supply propounded to McCreary 28 interrogatories pertaining to the degree of care exercised in the manufacture of McCreary tires.

Mr. Smith was first called by Equipment Supply as an adverse witness. In regard to the tire in question, he testified that Mr. Neff called him and inquired as to what he had in 1000 x 22 tires. He said he told Mr. Neff he had some General and McCreary tires, and after he quoted the price on the two brands, Mr. Neff said he had previously used McCreary tires which had given satisfactory service and he would take the McCreary tires. He said that the tires purchased by Mr. Neff (as distinguished from lug type drive wheel tires) were designed for use on the

front end of the vehicle or wherever Neff would want to use them. He said he was familiar with Mr. Neff's operation in using his trucks on long hauls and knew, in this particular instance, that Mr. Neff intended to use the tires on the front or steering axle wheels of his trucks. He said the normal mileage one could reasonably expect from a 1000 x 22 truck tire, when used on the front or steering axle of the vehicle, would vary between drivers and with the condition of the highway and equipment, but when properly cared for, such tire should run on the steering axle wheels from 30 to 70 or 75,000 miles. He said that in the trucking industry, after tires are used on the front, or steering axle, wheels, they are usually transferred to the dual wheels on the trailer where considerably more mileage can be expected from them. Mr. Smith estimated that more than 50% of the tread had been worn from the tire when he examined it following the accident. He said that any normal tire would be subject to failure after having been driven on the steering axle 70 or 75,000 miles. Mr. Smith said he purchased the McCreary tires from Friend Tire Company and that he dealt with Friend like Neff dealt with him; that he simply asked for the tire by brand name and had no literature, pamphlets or anything else from Friend or McCreary. He said that the particular tire involved in this case was not a specifically designed tire for any particular purpose, but was simply a common highway type truck tire that could be used anywhere.

Mr. Neff, the president and general manager of Equipment Supply, next testified in support of his company's complaint. He testified that he is engaged in trucking commodities interstate and intrastate and has been involved in the trucking industry as driver, manager or lessee for a period of 24 to 25 years. He said he had been buying tires from Smith for some time and quite often, when he would need tires, he would call Smith and indicate what type of tire he needed, whether for steer axle or drive axle and Mr. Smith would tell him what he had available and what price they would be. He said that on this particular occasion when he purchased the McCreary tires, he was quite sure Mr. Smith referred to the McCreary and possibly to the General tires as the two brands he

had in stock, and that Smith told him what the prices on the two brands would be. He then said:

"I didn't make note of what the Generals could have been at that particular time but it was my election, then, that he had these available and I had probably ten others in service. They would suit our need."

Mr. Neff testified that if a truck was driving perfectly, a tire could be used on the front or sterring axle until the tread was worn to seven or eight, thirty-seconds of tread depth. He said the tread depth on the tire involved would have been twenty-two, thirty-seconds when it was new and that when he measured the tread depth after the accident, in the only possible area left for measurement, it measured twelve, thirty-seconds. Mr. Neff testified that he would expect to get at least 150,000 miles out of a tire and on this point he testified as follows:

"Q. Mr. Neff, what was your practice in regard to steer axle tires?

A. We would pull those tires at sometime near half-worn—anywhere from eight, thirty-seconds up, depending on the condition of the tire, and move it to the trailer.

Q. And then what would you do?

A. The tire would run on out, then, and until it had in the area of two to four, thirty-seconds tread depth on it, and then we'd send it down and have it recapped.

Q. All right, sir.

A. And expect then another fifty to sixty thousand miles after recap."

Mr. Neff testified on recall that prior to the purchase of the ten tires from Mr. Smith, he had used 20 or 30 McCreary tires on his trucks. He said he simply purchased the tires from Mr. Smith and installed them on the wheels himself. He then testified that Mr. Smith had

nothing to do with the transaction other than to sell him the tires. He said the ten tires he purchased from Smith were the highway type of tires he ordered and were the type tires for the use he intended to put them. He then testified as follows:

"Q. Now, I take it from your testimony here, as well as your counsel's, Mr. Bassett's opening statement that your position in this lawsuit is that there was a defect in this particular tire that was caused during the manufacture of the tire; is that right?

A. Yes.

Q. So it was nothing that Mr. Smith did or did not do in connection with the tire, as far as you know?

A. That's correct."

Mr. Neff said he purchased the ten tires from Smith in October, 1969; that his inventory and records reflect he placed the specific tire involved on his truck in March, 1970, and drove the unit with the tire on the front axle some 70,000 miles plus, up until the accident which occurred in September, 1970.

Mr. H. E. Maxey, a chemist, testified as an expert for Equipment Supply. He said he examined the remainder of the tire after the accident and the pertinent portion of his testimony appears in the record as follows:

"Q. Now, Mr. Maxey, following your inspection and investigation of this tire failure, did you arrive at an opinion as to what had happened?

A. Yes, sir.

Q. What is that opinion; tell the Court and jury.

A. Well, it is my opinion that the tread on this tire (pointing to Plaintiff's Exhibit No. 3 to Smith) came loose in this area and as it rolled on the truck and as it flexed, . . . in the normal use of it. . . . You had friction set up between the tire, the carcass, and this

tread. . . . and it generated sufficient heat to break down the nylon and also to break down the rubber. . . . it blew out at that place.

Q. All right, sir. . . . do you have an opinion as to what caused the friction, the heat between the tread and the carcass, as you have described for the jury? . . .

A. Yes.

Q. And what is that opinion?

A. The tread came loose from the carcass because it wasn't put on the carcass properly or substantially, and the rubbing started and it disintegrated.

*  *  *

A. . . . Now, when this tread is put on . . . the carcass is built, the tread is put on the carcass through heat and pressure. Now, if this carcass has a little dust on it—if it has a little moisture on it, if it has any impurity on it that would interfere with the rubber on the carcass or interfere with the bonding, then you are going to have a weak spot in the bonding of the tread to the carcass, much like patching the old innertube many years ago. You had to clean the tube very well in order to get the patch to stick on it, and if the carcass has a dirty spot on it or anything to interfere, you are not going to get a good bond with the tread. In my opinion, that is probably what happened here. *  *  *

It's my opinion that the tread was not properly bonded or substantially bonded to the carcass at the time of manufacture."

The substance of expert testimony offered by Mc-Creary was to the effect that the tire was properly manufactured and the blowout occurred because of wear and road damage to the tire. Mr. Lee Mason, who drove the truck approximately 7 or 8,000 miles on the last two trips immediately before the tire blew out, testified that he knew of no road damage to the tire and that he had no

prior knowledge of any defect in the tire or the steering mechanism on the truck until the tire blew out.

Instruction No. 13, given by the court, pertained to the form of verdict and was as follows:

"The form of the verdict in this case is by Interrogatories, as follows:
Do you find by a preponderance of the evidence that McCreary Tire and Rubber Company, Inc. defectively manufactured Tire No. KY0112 which proximately caused the damage to plaintiff.
————————.

Answer 'yes' or 'no.'
Sign (blank) as foreman.

If your answer is 'no,' you have decided the case. If your answer is 'yes,' then answer this Interrogatory:

What do you find by a preponderance of the evidence the plaintiff should recover for the following elements of damages:
1. Damage to Tractor $————.
2. Damage to Lufkin Trailer $————.
3. Damage to Fish Cargo $————.
4. Loss of Profits During Period Tractor was Down Being Repaired $————.
5. All Other Incidental Expense Reasonably Resulting from Collision $————.
Signed (blank) as foreman."

There was no objection to the form of the verdict, although there were objections to other instructions given. After all of the instructions were given, the trial court inquired as to whether there were any further objections and Equipment Supply's attorney answered in the negative.

In his argument to the jury, Equipment Supply's attorney stated:

"I told you at the beginning that this is not a suit against the McCreary Tire and Rubber Company for negligence, whereby we have alleged fault and re-

sponsibility. This suit, Ladies and Gentlemen, is a suit for a breach of implied warranty.

* * *

Now, we have the burden of proof—proving what caused it to fail. Our testimony shows in this particular case, expert testimony and other testimony, that this tire failed because of an improper bonding at the manufacturing source. In other words, there was a defect in the manufacturing."

It is apparent from the overall evidence in the record that the implied warranties both as to merchantability and fitness for purpose were met in this case, and certainly there is no substantial evidence that they were not. The evidence is clear, both from the testimony of Mr. Neff and Mr. Smith, that the tire was purchased by Neff and sold by Smith by brand name, and that Mr. Neff relied on his own judgment and not on that of Mr. Smith or McCreary in purchasing the tire. The testimony of both Mr. Neff and Mr. Smith was to the effect that the McCreary tire involved in this case was simply an ordinary truck tire manufactured for road use either on the front or steering axle of the truck or on the truck trailer. Mr. Smith admitted that he knew Mr. Neff intended to use the tires on the front, or steering axle, wheels in this particular instance but, assuming that these tires were specifically designed and sold for use on the steering axle wheels of the truck, there is no substantial evidence in this case that the tire did not fully comply with such intended use. Both Mr. Neff and Mr. Smith testified that when approximately one-half of the tread was worn from steering axle tires, they would be subject to failure and should be switched to a dual wheel position on the trailer. It was also their testimony that a front or steer axle tire would ordinarily reach this point of wear after approximately 70,000 miles. According to Mr. Smith the tread was more than half worn from the tire and according to Mr. Neff the tire had run more than 70,000 miles and, according to his measurement of the remaining tread on the shoulder of the tire, the tread lacked only one thirty-second of being half worn away. We conclude, therefore, that there was no substantial evidence that implied warranties of merchantability or use for intended purpose were breached in this case.

In support of its assignment of error under its first point, Equipment Supply argues that if the tire was defective from *any cause,* Smith sold a defective tire and his motion for a directed verdict should not have been granted. Equipment Supply did only allege breach of warranties, but Smith's cross-complaint also alleged negligence and the case throughout was tried on the theory that McCreary failed to properly bond the tread of the tire to the carcass in manufacturing the tire. As already pointed out, the implied warranties of merchantability and fitness for a particular purpose (use on the steering axle) had been fulfilled at the time the tire failed and there was no evidence that Equipment Supply relied on the skill and judgment of Smith or McCreary in the selection or furnishing of the tire. Consequently, it would only follow that McCreary as well as Smith might have been entitled to a directed verdict on *implied warranties,* had it not been for the evidence of McCreary's failure to properly manufacture the tire. There was no suggestion in the evidence that Smith was negligent in any respect or that he had anything to do with the manufacture of the tire. The case, however, was submitted to the jury against McCreary on implied warranties as well as negligence in the manufacture of the tire, and the jury found for McCreary on both counts. We are of the opinion, therefore, that under the facts and evidence in this case, the court did not commit reversible error in directing a verdict in favor of Smith.

In *Smith* v. *Goble,* 248 Ark. 415, 452 S.W. 2d 336, an automobile driven by Goble crossed the center line of the highway and collided with one driven by Smith. Smith sued Goble on negligence and Goble interpleaded White County Motor Company as seller and Ford Motor Company as manufacturer on alleged breaches of warranties. Smith amended his pleadings also asking damages against White Motor Company and Ford. The trial court directed a verdict in favor of White Motor Company and the jury found in favor of Ford but returned a verdict for Smith against Goble. Smith appealed on the grounds, among others, that the court erred in not instructing a verdict against Ford on the existence of a breach of warranty, and in directing a verdict for White County Motor Company. The evidence was to the effect that it would require

a complete disassembly of the brake system to determine the exact cause of brake failure, and in affirming the trial court we said:

"Any error the court may have committed in dismissing White County Motor Company is now harmless and does not constitute reversible error. The evidence, above, is not sufficient to show any negligence on the part of White County Motor Company. See 8 Am. Jur. 2d *Automobiles* § 650 and 60 C.J.S. *Motor Vehicles* § 165(5). Furthermore, since the jury has exonerated Ford Motor Company for an alleged manufacturing defect that appellant's expert witness admits was latent and could not have been discovered without a complete disassembly of the right front wheel brake, appellant is now estopped to complain against White County Motor Company on a derivative liability upon the theory of an implied warranty. See *Davis* v. *Perryman*, 225 Ark. 963, 286 S.W. 2d 944 (1956)."

Appellants cite the case of *Mack Trucks* v. *Jet Asphalt, Et Al.*, 246 Ark. 101, 437 S.W. 2d 459. In that case Jet Asphalt obtained judgment for $5,000 against Mack Trucks for breach of implied warranty of fitness on two diesel truck engines. The appeal was based on the question of venue, lack of privity and limitations on express warranties. The judgment was based on implied warranties and we affirmed. The distinction between that case and the case at bar is that in *Mack Trucks* the purchase was made on special order after the purchaser had specified the work to be performed by the trucks in the operation of a gravel and asphalt plant. Diesel engines were specifically required by the purchaser. The trucks were built and diesel engines were installed by the manufacturer after the order for them had been given by the purchaser. It was necessary for the purchaser to discard the diesel engines furnished with the trucks and have new engines installed.

The appellants rely on our decision in *DeLamar Motor Co.* v. *White*, 249 Ark. 708, 460 S.W. 2d 802. In that case White brought suit in chancery to cancel a contract under which he had purchased a Chevrolet diesel truck

from DeLamar Motor Company. White relied upon breach of warranty that the vehicle was fit for the purpose for which it was to be used. The contract was canceled by the chancellor and on appeal we affirmed. The evidence in that case was that the engine vibrated excessively and the brakes did not function properly. DeLamar contended that the defect complained of was the fault of the manufacturer and that the seller was not responsible, but we rejected this argument under the provisions of § 85-2-315, *supra.* The distinguishing facts in the *DeLamar Motor Co.* case are stated in that opinion as follows:

> "At the time of the sale White told the seller that he intended to use the truck to pull a gasoline transport and to pull a lowboy. He also stated that Mr. DeLamar 'said it would do the job, and I had no reason to doubt it.' On cross examination White admitted that when he bought the truck he thought that it would do the job he wanted it to do. That belief, however, did not negate the warranty. Any purchaser ordinarily expects the article being bought to serve its purpose, else he would not buy it. It does not follow, however, that the purchaser may not also be relying upon the seller's judgment in the matter. Here White testified that he had not previously owned a Chevrolet diesel truck."

We found from the record in that case that the chancellor was justified in finding that White did rely upon DeLamar to select a vehicle capable of doing the job White had in mind for it, and we found that the chancellor's decision was not against the weight of the evidence.

As to the appellants' second point, the trial court's limitation of proof of consequential damages in lost profits to the sum of $3,500, arose in connection with an argument between the parties pertaining to insurance Equipment Supply collected in connection with the loss, and the assigned error becomes moot in the light of the decision we have reached that the case should be affirmed.

As to the third point relied on by Equipment Supply, there was no substantial evidence that implied warranties had been violated in this case; consequently, there was

nothing left to go to the jury except the evidence on which the entire case was primarily tried; that is, whether Mc-Creary Tire and Rubber Company defectively manufactured the tire in question. We conclude, therefore, that the trial court did not err in submitting the special interrogatories to the jury on this point. As already stated, however, Equipment Supply did not object to this action of the trial court even after the court specifically inquired whether or not there were additional objections.

The judgment is affirmed.