## Toth v. Glessner

*David J. Flower*, for plaintiffs.
*Robert E. Thomas* and *Alexander Ogle*, for defendants.

SHAULIS, *J.*, November 9, 1979—This matter is before the court on preliminary objections by defendant Thiele, Inc. On April 29, 1977 plaintiffs purchased a new G.M.C. truck from defendant Glessner Hi-Way Truck Sales & Service Inc., for a total cost, with trade-in, of $57,718. Defendant Glessner ordered a dump body from defendant Thiele to be attached to plaintiffs' truck. Plaintiffs used the truck for the purpose of hauling coal.

Shortly after purchase plaintiffs began to experience difficulties with the vehicle including the hoist installed by defendant Thiele. This was repaired by Thiele at a cost of $1,326 charged to and paid by plaintiffs. Subsequent to such repairs the hoist or lift again became defective and the subframe installed by defendant Thiele cracked. Plaintiffs now seek to revoke their acceptance of the vehicle and claim breaches of the implied warranties of merchantability and fitness for a particular purpose. Defendant Thiele contends that there is no cause of action against Thiele because of lack of privity of contract between plaintiffs and defendant Thiele.

, In accordance with Pa.R.C.P. 1017(b)(3), Thiele, Inc., has moved for a more specific pleading contending that plaintiffs' amended complaint does not sufficiently apprise it of the material facts necessary for a proper responsive pleading or for preparing a defense.

Paragraph one states that plaintiffs' third count fails to specifically set forth the alleged defects in the hoist and subframe. Plaintiffs contend that this defendant did the repair work and therefore was fully aware of the defects involved.* Even if we took plaintiffs' position as true it would not relieve him of the duty to make a proper pleading. This court has spoken quite plainly on this very point: ". . . [T]he opponent's knowledge of the facts does not excuse proper pleading." J. Reisman and Sons,

---

*It should be noted that counsel for defendant Thiele, Inc. took the position at argument on these objections that the complaint did not reveal who had made the repairs to the hoist. A reading of the pleading shows no merit to that position. Compare Gurzenda v. Berlin Lumber Co., 28 Somerset 183, 185 (1972).

Inc. v. Snyder's Potato Chips, 31 Somerset 77, 113 (1975). There, Coffroth, P.J., reiterated the position taken in Pittman v. Trent, 30 Somerset 283 (1975), stating at 113-14 that a defendant:

"'. . . is entitled to be informed in advance whether *plaintiffs* know them and which version of the facts plaintiff will attempt to prove. . . . The test of proper fact pleading is what the pleader says he will *prove,* not what he or the opponent *knows.* Special leniency may be accorded the pleader as to crucial facts which cannot be known or which are within the *exclusive,* or *superior* knowledge of the opponent, if such knowledge has been properly pleaded; but even then proper pleading is not automatically excused because the pleader may be required to use the discovery procedures available to him.'" (Emphasis in original.)

"The standards for pleading under Pa.R.C.P. 1019(a) are incapable of precise measurement and the Pennsylvania Supreme Court has declared that the lower courts have broad discretion in determining the amount of detail that must be averred: United Refrigerator Co. v. Applebaum, 410 Pa. 210, 189 A. 2d 253 (1963)." Barger v. Chevron, Inc., 56 D. & C. 2d 202, 207 (1972).

In this case, the relevant portions of the amended complaint reveal only that the hoist was defective and that the subframe was cracked. It is clear that an allegation that something is "defective" is not adequate. It has been held that an allegation of a "defective road" was an insufficient description: Powell v. East Union Township, 26 Dist. R. 924, 13 Schuyl. 174 (1917). In a suit upon a warranty, a description of "defective and cracked" was insufficient: Graylind Machinery Corp. v. Coopers Creek Chemical Corp., 74 Montg. 78 (1958). The

categorization of a scaffold as "dangerous and defective" was held to be improper pleading: Luzi v. Davis, 36 Northamp. 205 (1961). Preliminary objections to a pleading which described a container as "unfit and defective" were sustained in Schmidt v. Gaetano, 107 Pitts. L.J. 256 (1959). In Luzerne County the court has held that describing roofing materials as "defective" was insufficient and that plaintiff was obligated to aver the nature and extent of the defect: Coby Dist., Inc. v. Plisga, 46 Luz. 227 (1956). Averments which constitute mere conclusions of the pleader must be excluded in determining the sufficiency of the pleading: Pfeil's Estate, 287 Pa. 21, 134 Atl. 325 (1926).

Presently, this court, in disposing of preliminary objections, made these observations:

"It is obvious that the new matter is wholly conclusory and states no fact of negligent act or omission. . . .

"[The defendant] could not determine from the complaint what wrongful act or omission it is being charged with or what it will have to defend against." Choder v. Seven Springs, 39 Somerset 62, 65-66 (1979).

The court went on to state that the averments presented probably ". . . would satisfy the requirements of a *notice* system of pleading, but they do not satisfy Pennsylvania's *fact* system of pleading which requires that specific facts be pleaded from which the legal conclusion . . . can be inferred." Id. (Emphasis in original.) In the present case, plaintiffs have certainly given notice to defendant, but it is equally clear that they have failed to plead sufficient facts as the rule requires.

"A motion for a more specific complaint, under Pa.R.C.P. 1017(b)(3), is available so that a defend-

ant's right and ability to answer and defend will not be unduly impaired by a plaintiff's vagueness in stating the grounds of his suit." Local No. 163, I. Union v. Watkins, 417 Pa. 120, 122, 207 A. 2d 776 (1965). The complaint in the case now to be decided does not sufficiently apprise defendant of the things against which he must defend. Accordingly, defendant is entitled to a more specific pleading with respect to the first point of his motion.

Point two contends that plaintiffs have failed to specifically plead their special damages. A reading of the complaint does shed some light on the matter of damages. However, this information applies only to the initial difficulty experienced with the hoist or lift; it appears in paragraph 31 of the complaint where it is alleged that defendant Thiele made the repairs and charged plaintiffs $1,326. It is obvious from the tone of the complaint that plaintiffs have other damages in mind. Defendant is entitled to more specific information on this matter if it is expected to properly respond to the complaint and thereafter to prepare its defense.

Pa.R.C.P. 1019(f) requires that "averments of time, place and items of special damage shall be specifically stated." In an action of assumpsit, it is generally not appropriate to lump damages together: Racketa v. Gustave Paul, Inc., 24 D. & C. 2d 398, 400 (1961).

"Further, the rule requires not only that the elements of damages be itemized but, where they are already liquidated or reasonably capable of ascertainment, the respective amounts of damage attributable to each item shall be set forth: Rosenblum v. United Natural Gas Co. (No. 2), 14 D. & C. 2d 239 (1958)." Id.

This action is based upon the revocation of ac-

ceptance of the vehicle in question. It is apparent from the complaint that plaintiffs feel they have not had much luck with the vehicle and have opted to revoke their acceptance thereof rather than to advance additional funds to repair it. Accordingly, there are no specific bills that plaintiffs can plead as out of pocket losses. However, this does not excuse plaintiffs of their duty to apprise defendant of the element of damages. In a similar situation in Racketa v. Gustave Paul, Inc., supra, the court concluded that it would not be fair to require plaintiff to supply a breakdown of the estimate of the cost of the various items that would make up the repair bill. There it was held sufficient that plaintiff list the items of work to be done and to apprise defendant of the estimated total cost. See also Barger v. Chevron, Inc., supra.

Adoption of a similar course in the present case would eliminate the problems involved with the prospective repairs to the truck's hoist and subframe. There would remain the matter of the alleged lost profits and consequential damages. Since these have already occurred they are liquidated and must be specifically pleaded. "As to those damages which have already been incurred which are now under attack consisting of the $1,000 loss in production . . . in paragraph 13 . . . plaintiff is entitled to a more specific complaint [new matter]." Barger v. Chevron Inc., supra, at 211. In that case, some dollar amount had been provided in the pleadings but it was not sufficiently itemized and detailed. In the present case, there is no amount provided at all.

The view that damages in an assumpsit action which have already been liquidated are in the category of "special damages," which must be pleaded as a separate item and not lumped together, is sup-

ported by Weyand v. Herb, 12 Lebanon 134 (1967). So it must be in the present case. Therefore, we determine that defendant is entitled to a more specific pleading with respect to those damages which have already occurred and are therefore liquidated. These would consist of all those encompassed by plaintiffs' broad language in paragraph 35 of the amended complaint. In addition, plaintiffs must provide to defendant a reasonable estimate of all damages which are not yet liquidated, those being the repairs which have not yet been performed.

This action is in assumpsit and Pa.R.C.P. 1021 is found in those chapters of the rules pertaining to actions at law—assumpsit and is therefore relevant to this case. Rule 1021 reads as follows: "Any pleading demanding relief shall specify the relief to which the party deems himself entitled. Relief in the alternative or of several different types, including an accounting, may be demanded." It is abundantly clear that the claim for relief must be specific. At argument on this matter, plaintiffs took the position that it was not necessary to plead a specific amount, suggesting that a local rule of this court allows for the pleading of an amount in excess, or the demand of an amount in excess, of the arbitration limits. Plaintiffs are confused and their position has no merit.

It appears that plaintiffs are relying upon a combined reading of Pa.R.C.P. 1044(c) and Local Rule No. R-42-202.

"(c) In counties which have adopted rules governing compulsory arbitration the plaintiff shall in addition set out whether the amount claimed exceeds or does not exceed the jurisdictional amount requiring arbitration referred by local rule."

Pa.R.C.P. 1044(c). See local rule No. R-42-202. These apply only to actions in trespass and cannot be used in this instance. Accordingly, this point in the motion must also be sustained.

The main issue in this case for the court to decide is whether the lack of privity of contract should bar plaintiffs' action against defendant Thiele, Inc., where the alleged harm is purely economic.

The "citadel of privity" appears to have been all but razed, at least those parts of its walls which encompassed the action for personal injury caused by the defective product: Anno. Privity of Contract 16 A.L.R. 3d 683, 687. There is some tendency to dispense with the privity requirement in cases where the injury was the result of a violent accident, or at least where the product and the defect were of such a nature that violent injury could have been anticipated, although there are also a number of cases allowing recovery for purely commercial and nonviolent injury: 16 A.L.R. 3d 683, 688.

The jurisdictions are fairly evenly split on the question of whether privity is required in a breach of warranty action alleging purely economic loss. The courts have dealt with both vertical and horizontal privity, although the distinction is no longer of utmost importance. Vertical privity is privity which includes all parties up the distributive chain from the immediate seller. Horizontal privity is privity which includes the buyer of a product together with any person who uses the product. In the present case the privity between plaintiffs and defendants Glessner and G.M.C. is one of vertical privity. There is a direct chain of distribution from the manufacturer, General Motors, to the distributor, Glessner Hi-Way Truck, and finally to plaintiffs. A contractual link exists between defendants

Thiele and Glessner, but no such privity exists between Thiele and plaintiffs.

The privity defense has been chipped away at in Pennsylvania starting with Webb v. Zern, 422 Pa. 424, 220 A. 2d 853 (1966), wherein the Supreme Court specifically adopted Restatement, 2d, Torts, §402A and held that sellers were liable in tort without regard to privity. In Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968), the court, expressly stating the desire to create symmetry between tort and warranty actions, eliminated the privity requirement in assumpsit suits by purchasers against remote manufacturers for breach of implied warranty. The harm in Kassab was damage to plaintiffs' cattle herd as a result of a chemical found in the feed supplement purchased by plaintiffs. While privity existed only between the retailer of the feed and plaintiff, plaintiff was able to maintain a cause of action against the feed manufacturer because of the court's elimination of the vertical privity requirement.

The defense of privity was further eroded in Pennsylvania in Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903 (1974). In Salvador, plaintiff was personally injured when a boiler which his employer had purchased from the defendants exploded in the area where the plaintiff was working. The court held that lack of horizontal privity itself may no longer bar an injured party's suit for breach of warranty.

The question of privity as relating to purely economic loss has never been squarely decided in Pennsylvania. White and Summers, in their treatise on the Uniform Commercial Code, take the position that generally non-privity plaintiffs may not recover for economic loss: White and Summers, Uniform Commercial Code §11-5. The buyer's rem-

edy for economic loss is from his seller who can then seek indemnification from the ultimate manufacturer: White and Summers, supra. Dean Prosser, on the other hand, feels that a buyer should not recover losses on bargains from remote sellers but they should recover loss of profits: Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L. Rev. 791, 822-23 (1966).

Privity of contract is required in a contract action to recover economic loss for breach of implied warranty whether the action is controlled by the Uniform Sales Act or the Uniform Commercial Code: Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co., 97 Idaho 348, 544 P. 2d 306 (1975). Other jurisdictions still adhering to this view include, but are not limited to, Oregon, Alabama, North Carolina, Rhode Island, Indiana, Washington and Tennessee.

Privity of contract is essential before a purchaser can recover economic loss from a manufacturer for breach of implied warranty: Davis v. Homasote Co., 281 Or. 383, 574 P. 2d 1116 (1978). No right of action lies on an implied warranty of merchantability of fitness for use where the injury sustained was economic unless there is privity of contract: Chandler v. Hunter, 340 So. 2d 818 (Ala. App. 1976). The court continues to adhere to the privity doctrine in cases outside the scope of products liability or in cases not involving personal injury or property damage: McKinney Drilling Co. v. Nello L. Teer Co., 38 N.C. App. 472, 248 S.E. 2d 444 (1978).

The rationale for retaining the privity requirement is probably best summed up by Richards v. Goerg Boat and Motors, Inc., _____ Ind. App. _____, 384 N.E. 2d 1084 (1979), wherein the court stated at 1092:

"Generally, privity extends to the parties to the contract of sale. It relates to the bargained for expectations of the buyer and seller. Accordingly, when the cause of action arises out of economic loss related to the loss of the bargain or profits and consequential damages related thereto, the bargained for expectations of buyer and seller are relevant and privity between them is still required. Implied warranties of merchantability and fitness for a particular use, as they relate to economic loss from the bargain, cannot then ordinarily be sustained between the buyer and a remote manufacturer." (Citations omitted.)

Breach of implied warranty of merchantability or of fitness for particular use has often been recognized as a valid ground for recovery, even in the absence of privity, in actions for harm other than personal injury or damage to property other than that purchased.

In Hiles Co. v. Johnston Pump Co. of Pasadena, 93 Nev. 73, 560 P. 2d 154 (1977), the court held that lack of privity was not a bar to an action for recovery of economic loss based on a breach of warranties. The court stated that it could perceive no reason to distinguish between recovery for personal and property injury, on the one hand, and economic loss on the other.

In L.B. Gasque v. Eagle Machine Co., Limited, 270 S.C. 499, 243 S.E. 2d 831 (1978), the issue was whether damages in the form of diminution in value of the defective product and consequential economic loss constitute damage to the property of the consumer within the meaning of section 2-318 of the Uniform Commercial Code. The court held that such harm does constitute property damage

within the meaning of the section since there was no such limiting language in the act.

There has been a shift of emphasis from privity to foreseeability of loss to the plaintiff: Mack Trucks of Arkansas, Inc. v. Jet Asphalt and Rock Co., 246 Ark. 101, 437 S.W. 2d 459 (1969). In that case, plaintiff brought an action for breach of the implied warranty of fitness for a particular purpose because of two defective diesel truck engines. The defendant argued that recovery in the absence of privity only applied to situations where personal injury or damage to other property was involved. The court stated that if such a restrictive application of the code was intended, the legislature would have specifically stated that it was so limited.

In Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So. 2d 377 (1972), various defects in an automobile purchased by plaintiff rendered it practically unusable. Defendants asserted lack of privity as a defense to the express and implied warranties causes of action. The court held that the pecuniary loss resulting from an unusable vehicle is recoverable when there is an express warranty even without privity. The court went on to hold that although there is a split of authority on the question, there is no adequate reason for not applying the same rule and allowing recovery when there is an implied warranty without regard to privity.

Two recent cases have further sounded the death knell for the defense of privity in a breach of warranty action for purely economic loss. In Morrow v. New Moon Homes, Inc., 548 P. 2d 279 (Alaska, 1976), the court held that there is no satisfactory justification for a remedial scheme which extends

the warranty action to a consumer suffering personal injury or property damages but denies similar relief to the consumer "fortunate" enough to suffer only direct economic loss. The court stated that the cleavage between economic loss and other types of harm is a false one, that each species of harm can constitute the "overwhelming misfortune" in one's life which warrants judicial redress. In dismissing the argument that if implied warranty actions are extended to direct economic loss, manufacturers will be subject to liability for damages of unknown and unlimited scope, the court stated that potential liability could be limited by use of disclaimers. The court's decision also preserved the well-developed principle that "the law of contract should control actions for purely economic losses and that the law of tort should control actions for personal injuries." Comment, "The Vexing Problem of the Purely Economic Loss in Products Liability: An Injury in Search of a Remedy," 4 Seton Hall L. Rev. 145, 175 (1972).

A manufacturer can be responsible without regard to privity for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability: Nobility Homes of Texas, Inc. v. Shivers, 557 S.W. 2d 77 (Tex. 1977). While recognizing the split as to whether privity should be abolished in implied warranty actions for economic loss, the court in Nobility Homes, supra, stated that the fact that a product injures a consumer economically instead of physically should not bar recovery. "Economic loss can certainly be as disastrous as physical injury." Id. at p. 81.

In the present case, lack of privity between de-

fendant Thiele and plaintiffs should not bar plaintiffs' recovery for their economic losses. It was certainly foreseeable that if the truck body was defectively designed, loss or injury might be caused to the ultimate purchaser of the truck. While the only direct contractual dealings were between Thiele and Glessner, Thiele knew the contract contemplated the sale of the completed vehicle to another party for the purpose of hauling coal. The Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §1-101 et seq. [see now 13 Pa.C.S.A. §1101 et seq.], nowhere excludes recovery for economic loss based on breach of warranty. Indeed it could be argued that one of the major purposes of the code was to design a "uniform" system of recovery for economic loss occasioned by breach of contractual duties.

Plaintiffs in the current action were fortunate enough not to suffer any physical injuries. Defects in the construction of a dump truck body could cause severe injuries to the driver if a malfunction occurred in the process of transporting coal. The buyer's recovery should not depend on whether he suffered physical harm or not. Further, the losses sustained by plaintiffs in the present case are certainly as disastrous in consequences as physical injuries. Plaintiffs were forced to expend large sums of money to put defendant's product in working condition. The defects were severe enough to make the dump truck practically worthless. Not only have plaintiffs lost the cost of repairing the dump truck but they have also lost the purchased money invested for the dump body.

Fear that holding manufacturers liable for economic loss will impose unlimited and unforesee-

able liability upon manufacturers is unfounded. The code itself protects manufacturers against such unlimited and unforeseeable liability. The code provides in section 2-316 that manufacturers can limit their liability by the exclusion or modification of warranties. The terms of the code sections themselves dealing with remedies for breach of implied warranties are also restrictive in nature.

Section 2-314 dealing with the implied warranty of merchantability specifically limits its application to sellers of goods of that kind. Merchantable goods are further defined as goods which "are fit for the ordinary purposes for which such goods are used. . . ." 12A P.S. §2-314.

Section 2-315 provides for the implied warranty of fitness for a particular purpose: 12A P.S. §2-315. This implied warranty does not arise unless ". . . the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. . . ." Thus, a seller or manufacturer's liability is not unlimited under the code and financial disaster will not result from the abolition of privity.

ORDER

Now, November 9, 1979, defendant Thiele's first, second and third preliminary objections are sustained and plaintiffs are allowed 20 days to file a second amended complaint, containing more specific pleadings in accordance with this opinion; preliminary objections four and five are overruled.