MICHAEL D. BLANKENSHIP *et al.*, Plaintiffs-Appellees, *v.* NORTHTOWN FORD, INC., *et al.*, Defendants-Appellants.

Fourth District    No. 16465

Opinion filed April 16, 1981.

GREEN, J., specially concurring.

Thomas W. Gendry and Michael I. Campbell, both of Hull, Campbell, Robinson & Gibson, of Decatur, for appellants.

Allison & Gollings, of Decatur (James R. Gollings, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiffs, Michael Blankenship and Karen Blankenship, purchased a new 1979 Ford Bronco in September 1978, from defendant, Northtown Ford, Inc. (dealer), for a purchase price of $10,217. The car was manufactured by defendant, Ford Motor Company (manufacturer). The manufacturer provided plaintiffs with a 12-month/12,000 mile warranty on the vehicle by which the manufacturer warranted that it would "repair or adjust any parts * * * found to be defective in factory materials or workmanship." From September 17, 1978, when plaintiffs took possession of the automobile, until the latter part of January 1979, the plaintiffs brought the automobile to the dealer on 11 separate occasions for repairs. Plaintiff Michael Blankenship testified at trial to the history of problems the plaintiffs experienced with the vehicle. He had experience and an educational background in automobile repair and testified based upon his expertise. His testimony as to the repairs performed was fully corroborated by the work orders enumerating the work to be performed on the vehicle which the dealer drafted for its repair shop.

At the time plaintiffs took possession of the automobile, Michael Blankenship road-tested the vehicle and noticed a "clunking noise" in the drive train which the salesman at the dealership said he would check.

Thereafter the vehicle was first returned to the dealer on September 28, 1978, when the car had 740 miles on its odometer because a front shock absorber had come loose, the car was leaking oil, and when in motion there was a clunking noise in the drive train (the same noise plaintiff had previously told the dealer's salesman about), and there was a jerking feeling in the steering as one drove the car.

On October 3, 1978, Michael brought the car to the dealer to replace the alternator belt. At that time the drive train noise had resumed and a clutch adjustment was needed. When plaintiffs returned to the dealer to get the car after the repairs had been performed, the clutch was so maladjusted that Michael could not drive the car, and the shop foreman then adjusted the clutch for him.

On October 16, 1978, Michael returned to the dealer's repair facilities because the drive shaft of the vehicle had broken, making it inoperable. The work order stated that a "clunking noise" had again been reported. On October 25, 1978, plaintiffs once again returned the vehicle to the dealer to repair the drive shaft which had fallen out of the car. On October 31, 1978, Michael took the vehicle into the dealer to repair an oil leak. On November 1, 1978, he returned the vehicle to the dealer again for repair of the drive shaft which again had broken. On November 7, 1978, he again returned the car to the dealer; the drive shaft had broken once again and the automobile had a bad oil leak. On November 15, 1978, Michael again brought the vehicle to the repair shop. He stated that there had been a vibration in the car after its prior repair and the vibration got very bad and finally the U-joint broke and the car was inoperable. Michael took the car to the dealer again on November 29, 1978, for repair of the drive shaft which had again fallen out. He stated that at that time the dealer put in new U-joints, changed both rear springs, and changed the horn of the vehicle. On December 18, 1978, Michael returned the vehicle to the dealer for the installation of a rear drive shaft which again was out. On January 11, 1979, he took the vehicle back to the dealer because the drive shaft was again out and there were also problems with the differential and the radio. On January 25, 1979, Michael again brought the car in for repairs. The drive shaft was out again and the dealer repaired the radio at that time, in addition to which there was a problem with one brakeline which had bent when the drive shaft fell out.

Michael testified that during the time he possessed the car he was not able to use if for the normal use for which it was purchased because the possibility of the U-joints breaking made the car dangerous to drive at even normal city driving speeds. At highway speeds, if the U-joints were to break, Michael stated that that could cause the car to overturn.

Plaintiffs finally (apparently) returned the automobile to the dealer, after which, in April 1979, they filed suit against both the dealer and the

manufacturer, seeking rescission of the sales contract based upon section 2—314(2)(c) of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1979, ch. 26, par. 2—314(2)(c)). Plaintiffs alleged the defendants breached the implied warranty of merchantability by selling plaintiffs a vehicle which was not fit for the ordinary purposes for which such goods are used. Plaintiffs sought, as damages, the recovery of the purchase price plus interest paid and consequential damages. At the bench trial which followed, plaintiff Michael Blankenship was the only witness, and he testified from his expertise as to the various problems with the vehicle previously enumerated. He also testified that no one except the dealer ever repaired or attempted to repair the vehicle. Neither defendant cross-examined Michael nor presented any evidence on their own behalf. The trial court entered judgment in favor of the manufacturer and returned a judgment in favor of the plaintiffs and against the dealer, Northtown Ford, Inc., for $11,024.94, from which judgment the dealer appeals.

The sole issue on appeal is whether defendant-dealer's contractual disclaimer of implied warranties bars plaintiffs from rescinding the sale based upon the delivery of a defective automobile. We affirm.

Plaintiff's rescission action is grounded in section 2—608 of the UCC which provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." Ill. Rev. Stat. 1979, ch. 26, par. 2—608.

Plaintiffs base their right to rescind on the nonmerchantability of the vehicle. They claim that the goods, the vehicle, was not fit for ordinary purposes and that therefore the dealer breached the implied warranty of merchantability under section 2—314 of the UCC. Section 2—314 states in part:

(1) Unless excluded or modified (Section 2—316), a warranty that the goods shall be merchantable is implied in a contract for

their sale if the seller is a merchant with respect to goods of that kind." (Ill. Rev. Stat. 1979, ch. 26, par. 2—314(1).)

The factual question of whether this vehicle was fit for ordinary purposes, based on the evidence presented at trial, is uncontroverted; this vehicle was not merchantable but was, rather, clearly and substantially defective.

The dealer asserts that it disclaimed all implied warranties in its sales contract, and therefore plaintiffs cannot rescind based upon any implied warranty. Initially, we note that revocation of acceptance under section 2—608 of the UCC is not limited to goods which are not merchantable but rather contains a more subjective standard: rescission may be sought if the nonconformity of the goods substantially impairs their value to the buyer. In this case, the evidence unequivocally demonstrated that the substantially defective nature of the vehicle clearly impaired its value to the plaintiffs and thus revocation of acceptance is appropriate even if the dealer has properly disclaimed all implied warranties. We so hold.

The two disclaimer of warranty provisions relied upon by the dealer are contained in the sales contract executed by the parties which the plaintiffs signed. The first attempted disclaimer of warranties appeared on the front side of the contract, printed in the smallest typeset used in the contract, and reads: "The seller, North Town Ford, hereby expressly disclaims all warranties either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it liability in connection with the sale of the vehicle."

On the reverse side of the contract, a second attempted disclaimer reads:"9. *Factory Warranty*: Any warranty on any new vehicle or used vehicle still subject to a manufacturer's warranty is that made by the manufacturer only. The seller hereby disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose."

The dealer asserts that its two disclaimers, either individually or taken together, comply with the requirements of section 2—316 of the UCC which establishes guidelines for warranty disclaimers. Therefore, the dealer concludes that it sold the car to plaintiffs without any implied warranties and that it was essentially an "as-is" sale. Section 2—316 provides in part:

"(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous * * *." Ill. Rev. Stat. 1979, ch. 26, par. 2—316(2).

Basing their argument on appeal on an alternative ground, plaintiffs' counsel has conceded the compliance of those disclaimers with section 2—316 of the UCC. The disclaimer on the front of the contract is in tiny

print and clearly insufficient to satisfy any interpretation of the conspicuousness requirement for disclaimers under section 2—316. The second disclaimer, containing the heading "Factory Warranty," is misleading, and a disclaimer which follows a misleading heading cannot be deemed to comply with section 2—316. (See White & Summers, Uniform Commercial Code, ch. 12, §5, at 443 (2d ed. 1980).) Even if these disclaimers were in technical compliance with section 2—316, as plaintiffs attempted to concede, the surrounding circumstances of this transaction would prohibit the dealer from being allowed to avoid rescission based upon their technical compliance with section 2—316. Defendants were purportedly selling plaintiffs a "new car." The logical extension of the dealer's argument in this case is that delivery by the dealer of anything which it referred to as a "new car," even an automobile without an engine, would bar plaintiffs' action for rescission based upon an implied warranty of merchantability. We agree with the comment to the UCC which specifically rejects this interpretation of the disclaimer provision and which states:

> "4. In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 2—316.
>
> This is not intended to mean that the parties, if they consciously desire, cannot make their own bargain as they wish. But in determining what they have agreed upon good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation." Ill. Ann. Stat., ch. 26, par. 2—313, Uniform Commercial Code Comment (4), at 219-20 (Smith-Hurd 1963).

The dealer in this case sold plaintiffs an automobile which was unfit for the ordinary purposes for which such vehicles are used, thereby breaching the implied warranty of merchantability. The dealer did not properly disclaim the warranty, and could not disclaim its obligation to deliver the product which formed the basis of the parties' bargain. Thus the trial court correctly held revocation of acceptance to be a proper remedy.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE GREEN, specially concurring:

I concur in the decision of the majority to affirm. I agree that the attempted disclaimers of the implied warranty of merchantability by defendant Northtown Ford were ineffective. As stated by the majority, the attempted waiver on the front page was not sufficiently conspicuous and that on the back page followed a misleading heading which indicated that the provisions following it all concerned warranties of the manufacturer and not the seller. No other explanation for affirmance is necessary, and I deem it unwise and am unwilling to attempt to do so.

The remedies of rejection and revocation of acceptance are provided for in sections 2—601 and 2—608 of the Uniform Commercial Code. (Ill. Rev. Stat. 1979, ch. 26, pars. 2—601, 2—608.) It has been said that with these provisions the drafters of the Code "attempted to bring some order out of the chaotic body of law which had previously passed under the title 'recission'. " (J. White & R. Summers, Uniform Commercial Code, ch. 8, §8—1, at 246 (1972).) To come under the purview of either section, goods sold must be of such quality as to fail to conform to the contract of sale. The majority states that even if the warranty of merchantability had been waived here, section 2—608 would permit the plaintiff to rescind. Reaching that conclusion requires a determination that the defects here caused the vehicle to fail to conform to a contract which permitted the motor vehicle to be merchantable. The instant automobile was unfit for ordinary use as an automobile, but that deficiency is precisely the type of deficiency which makes goods unmerchantable. Ill. Rev. Stat. 1979, ch. 26, par. 2—314(2)(c).

As we have done here, I would hold the seller strictly to the requirements for disclaimer of implied warranties, but had the disclaimer been properly effectuated, I would deem it to be a close question as to whether the disclaimer should be given the narrow application proposed by the majority.