**Sandra L. JACKSON, Plaintiff-Appellee,**

v.

**ROCKY MOUNTAIN DATSUN, INC., d/b/a Precision Datsun, Inc., a Colorado Corporation, Defendant-Appellant.**

No. 83CA0911.

Colorado Court of Appeals, Div. I.

Oct. 11, 1984.

Rehearing Denied Nov. 8, 1984.

Zuckerman & Kleinman, P.C., Leo T. Zuckerman, Michael Kleinman, Denver, for plaintiff-appellee.

Miller & Leher, Michael P. Miller, Martin P. Miller, J. Matthew DePetro, Littleton, for defendant-appellant.

VAN CISE, Judge.

The plaintiff, Sandra Jackson (buyer), sued the defendant, Rocky Mountain Datsun, Inc., d/b/a Precision Datsun, Inc. (dealer), to recover the amount she had paid on the purchase price of a new Datsun car, plus various incidental damages. The dealer counterclaimed to recover the rental value of a "loaner" car. The dealer appeals an adverse judgment entered after a trial to the court. We affirm.

During the first six months that buyer owned the car, it had to be towed to the dealer's shop for repairs on at least seven occasions. Sometimes the car would not start. On other occasions it would stop running and stall in traffic. Several of the dealer's mechanics told the buyer that they did not know what was wrong with the car but that it was a "lemon." The buyer testified that her employer became upset because she missed work as a result of her difficulties with the car. She estimated that the car was in the dealer's shop four out of the first six months that she owned it.

In July 1980 the buyer brought the car in for servicing and was advised by one of the dealer's employees to contact the manufacturer of the car, Nissan Motors in U.S.A., if she had any more problems with it and that the dealer would no longer continue working on it. In response, the buyer stated that the dealer would be hearing from her attorney. The buyer then left in a "loaner" car provided by the dealer. Thereafter, the buyer refused the dealer's request to pick up her car and return the "loaner" car. The "loaner" car was apparently picked up by the dealer in late September 1980.

In a letter dated September 3, 1980, the buyer's attorney advised the dealer that the buyer had revoked her acceptance of the car and was demanding the return of the amount she had paid on the purchase price of the car, plus various incidental damages. The dealer refused the buyer's demand, and she commenced the present action in December 1980.

In her initial complaint the buyer named both Rocky Mountain Datsun and General Motors Acceptance Corporation (the lender) as defendants. During the pendency of the action the lender repossessed the car and sold it. Thereafter, the buyer's claims against the lender were settled, and by stipulation it was dismissed as a party to the action. In an amended complaint the buyer named Nissan Motors, the manufacturer, as an additional defendant. However, the claims against Nissan were dismissed at the close of plaintiff's case, and Nissan is not a party to this appeal.

Following a trial to the court, a judgment was entered in favor of the buyer in the amount of $5,963.27, plus costs and interest and less a $10 setoff awarded the dealer on its counterclaim. The judgment in favor of the buyer included her down payment and all payments made to the lender under the installment sales contract, plus various incidental damages.

## I. *Substantial Impairment*

The dealer argues that the trial court erred in concluding that the buyer had justifiably revoked her acceptance of the car because she failed to establish that the car's value was substantially impaired as a result of a nonconformity. We disagree.

■ Contrary to the dealer's suggestion here, in determining whether the value of goods are substantially impaired within the meaning of § 4-2-608, C.R.S., reference must be made to the effect of the goods' nonconformities upon the particular buyer asserting a right of revocation. *Keen v. Modern Trailer Sales, Inc.*, 40 Colo.App. 527, 578 P.2d 668 (1978).

■ Here, the evidence regarding the buyer's continuing difficulties with the car and the dealer's repeatedly unsuccessful attempts to repair it supports the conclusion that the value of the car to the buyer was substantially impaired as a result of its mechanical defects. *See Blankenship v. Northtown Ford, Inc.*, 95 Ill.App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167 (1981); *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977). *See generally* Annot., 98 A.L.R.3d 1183.

## II. *Evidentiary Rulings*

The dealer next contends that the trial court abused its discretion by not granting its motion for a continuance so that it could secure the attendance of a witness who had been subpoenaed by Nissan Motors but failed to appear at trial. In an offer of proof, the dealer stated that the witness would testify that the buyer's car was fully repaired on the last occasion that the dealer worked on it. We find no abuse of the trial court's discretion.

■ Under § 4-2-608(1)(a), C.R.S., a buyer is entitled to revoke acceptance if he accepts goods on the reasonable assumption that a nonconformity will be cured by the seller and the nonconformity is not "seasonably cured." Thus, a buyer is not required to provide a seller with an unlimited number of opportunities to cure a nonconformity before revoking acceptance under § 4-2-608, C.R.S.

■ In the present case, we conclude as a matter of law that the dealer was given an adequate opportunity to cure the car's defects prior to the time the buyer revoked her acceptance. *See Durfee v. Rod Baxter Imports, Inc., supra.* Thus, the testimony offered by the dealer in connection with its motion for a continuance could not possibly have affected the outcome of the trial and, hence, was irrelevant. CRE 401.

■ For the same reason, we reject the dealer's assertion that the trial court erred in refusing to permit the subsequent purchaser to testify as to the car's performance after he purchased it from the lender. As noted previously, the fact that the dealer may have ultimately succeeded in repairing the car was not relevant to the trial court's determination that the buyer had justifiably revoked her acceptance.

## III. *Notice of Revocation*

■ The dealer also contends that the buyer failed to establish that she notified the dealer of her intention to revoke acceptance of the car because the revocation letter from the buyer's attorney was not in-troduced into evidence. This contention is without merit.

In its answer to the buyer's initial complaint, the dealer admitted receiving the letter from the buyer's attorney, and a copy of the letter was attached to the buyer's complaint. Moreover, one of the dealer's employees testified at trial that the dealer had received such a letter.

■ Equally unmeritorious is the dealer's assertion that the buyer's notice of revocation of acceptance was ineffective because it was inconsistent with her continued use of the "loaner" car. She testified that the dealer's requests for the return of the "loaner" car were coupled with the demand that she pick up her car. Viewed in this context, the evidence of her refusal to return the "loaner" car was consistent with, rather than contrary to, the trial court's finding that she effectively notified the dealer of her intention to revoke acceptance.

■ We also reject the dealer's assertion that the buyer's notice of revocation was not effective because it did not set forth in detail the precise nature of the car's defects or nonconformities. Section 4-2-608(2), C.R.S. (Official Comment 5) states that:

"The content of the notice ... is to be determined by considerations of good faith, prevention of surprise and reasonable adjustment...."

Here, the buyer repeatedly notified the dealer of the defective performance of the car, and the dealer made repeated attempts to repair it. Under these circumstances, it was not necessary for the buyer to set out in detail the car's nonconformities in her notice of revocation. *See Prutch v. Ford Motor Co.,* 618 P.2d 657 (Colo.1980); *Western Conference Resorts, Inc. v. Pease,* 668 P.2d 973 (Colo.App.1983).

■ There is also no merit to the dealer's assertion that the buyer's notice of revocation was untimely. *See Stroh v. American Recreation & Mobile Home Corp.,* 35 Colo.App. 196, 530 P.2d 989 (1975); *Irrigation Motor & Pump*

*Co. v. Belcher,* 29 Colo.App. 343, 483 P.2d 980 (1971).

### IV. *Delivery of Title*

The dealer further contends that the buyer was precluded from revoking her acceptance of the car because she was unable to deliver the car's certificate of title to the dealer. We disagree.

There is no requirement under the provisions of the UCC that on revocation of acceptance a buyer must deliver title to the goods to the seller. Indeed, under § 4–2–711(3), C.R.S., on revocation of acceptance, a buyer retains a security interest in goods in his possession for any payment made on their price and may resell the goods in the same manner as an aggrieved seller. *See* § 4–2–706, C.R.S. And, where a buyer does not exercise his right of resale, generally all that is required is that the buyer assign to the seller all of his interest in the goods. *Evans v. Graham Ford, Inc.,* 2 Ohio App.3d 435, 442 N.E.2d 777 (1981).

The dealer does not assert here that it did not receive adequate notice of the resale of the car as required by § 4–2–706, C.R.S., nor that the plaintiff buyer did not account to the dealer for the amount the lender received for the car or that the lender received more for the car than was necessary to discharge the buyer's obligations under the installment sales contract. Hence, the dealer has not shown that it was prejudiced in any manner by the fact that the car was resold by the lender rather than directly by the plaintiff buyer.

### V.

The dealer's remaining contentions are without merit. The buyer's request for attorney fees pursuant to C.A.R. 38 is denied.

Judgment affirmed.

PIERCE and TURSI, JJ., concur.