Edward CATE, Jr., d/b/a Cate's
Transmission Service,
Petitioner,

v.

DOVER CORPORATION, Respondent.

No. C–9186.

Supreme Court of Texas.

June 6, 1990.

.

Michael D. Peek, Texarkana, for petition-
er.

Louise Tausch, Texarkana, for respondent.

## OPINION

DOGGETT, Justice.

We consider the enforceability of a disclaimer of implied warranties. The trial court upheld the disclaimer and granted summary judgment in favor of Dover Corporation. The court of appeals affirmed. 776 S.W.2d 680. We reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

In September 1984, Edward Cate, doing business as Cate's Transmission Service, purchased from Beech Tire Mart three lifts manufactured and designed by Dover Corporation to elevate vehicles for maintenance. Despite repairs made by Beech and Dover, the lifts never functioned properly. Dover contends that Cate's subsequent claim against it for breach of the implied warranty of merchantability is barred by a disclaimer contained within a written, express warranty.

This warranty is set forth on a separate page headed in blue half inch block print, with the heading: "YOU CAN TAKE ROTARY'S NEW 5-YEAR WARRANTY AND TEAR IT APART." The statement is followed by bold black type stating, "And, when you are through, it'll be just as solid as the No. 1 lift company in America. Rotary." The text of the warranty itself is in black type, contained within double blue lines, and appears under the blue three-eighths inch block print heading "WARRANTY." The disclaimer of implied warranties, although contained in a separate paragraph within the warranty text, is in the same typeface, size, and color as the remainder of the text. [Publisher's Note: See Appendix for illustration of warranty and disclaimer.]

■ An implied warranty of merchantability arises in a contract for the sale of goods unless expressly excluded or modified by conspicuous language. Tex.Bus. & Com.Code Ann. §§ 2.314(a), 2.316(b) (Vernon 1968). Whether a particular disclaimer is conspicuous is a question of law to be determined by the following definition:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in a body of a form is conspicuous if it is larger or of other contrasting type or color. But in a telegram, any stated term is conspicuous.

*Id.* § 1.201(10). Further explanation is provided by comment 10 thereto:

This [section] is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it.

In interpreting this language, Dover argues that a lesser standard of conspicuousness should apply to a disclaimer made to a merchant, such as Cate. Admittedly, an ambiguity is created by the requirement that disclaimer language be conspicuous to "a reasonable person *against whom it is to operate.*" Comment 10, however, clearly contemplated an objective standard, stating the test as "whether attention can reasonably be expected to be called to it."

■ We then turn to an application of an objective standard of conspicuousness to Dover's warranty. The top forty percent of the written warranty is devoted to extolling its virtues. The warranty itself, contained within double blue lines, is then set out in five paragraphs in normal black type under the heading "WARRANTY." Nothing distinguishes the third paragraph, which contains the exclusionary language. It is printed in the same typeface, size and color as the rest of the warranty text. Although the warranty in its entirety may be considered conspicuous, the disclaimer is hidden among attention-getting language purporting to grant the best warranty available.[1]

---

1. Justice Grant's dissent in the court of appeals correctly characterizes the warranty as follows:

Dover has cleverly buried the disclaimer provision within language that strongly suggests

Dover cites *Ellmer v. Delaware Mini–Computer Systems, Inc.*, 665 S.W.2d 158 (Tex.App.—Dallas 1983, no writ), as authority for imposing a subjective standard of conspicuousness. In finding a disclaimer conspicuous, that court did look to the circumstances surrounding the transaction. That particular language, however, was in bold print, unlike the language under review here. Nor did that court give consideration to the effect of comment 10. Nevertheless, to the extent that *Ellmer* may be read as imposing a subjective standard, we disapprove it.[2]

Although this is a case of first impression in Texas, the facts here parallel those reviewed in other states. In *Massey–Ferguson, Inc. v. Utley*, 439 S.W.2d 57, 59 (Ky.Ct.App.1969), a disclaimer hidden under the heading "WARRANTY and AGREEMENT" was found not to be conspicuous:

> It is true that the *heading* was in large, bold-face type, but there was nothing to suggest that an exclusion was being made; on the contrary, the words of the headings indicated a *making* of warranties rather than a *disclaimer.*

(Emphasis in original.) Similarly, in *Hartman v. Jensen's, Inc.*, 277 S.C. 501, 289 S.E.2d 648 (1982), the court found that placing a disclaimer under the bold heading "Terms of Warranty" failed to alert the consumer to the fact that an exclusion was intended.[3] Dover's disclaimer similarly fails to attract the attention of a reasonable person and is not conspicuous.

Dover argues that *Singleton v. LaCoure*, 712 S.W.2d 757 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), held that a disclaimer in the same print as the rest of a form contract was conspicuous. While the disclaimer on the *back* of the form in *Singleton* was undistinguished in typeface, size and color from the remainder of the text, the same provision was repeated in a box as the only preprinted paragraph on the front of the contract. 712 S.W.2d at 758–59. *Singleton* is thus distinguishable from the case at bar.

Dover argues that even an inconspicuous disclaimer should be given effect because Cate had actual knowledge of it at the time of the purchase. Because the object of the conspicuousness requirement is to protect the buyer from surprise and an unknowing waiver of his or her rights, inconspicuous language is immaterial when the buyer has actual knowledge of the disclaimer. This knowledge can result from the buyer's prior dealings with the seller, or by the seller specifically bringing the inconspicuous waiver to the buyer's attention. The Code appears to recognize that actual knowledge of the disclaimer overrides the question of conspicuousness. For

---

a warranty that greatly benefits the consumer. The bold print language suggests that warranties were included rather than excluded. *See Mallory v. Conida Warehouses, Inc.*, 134 Mich. App. 28, 350 N.W.2d 825 (1984).

776 S.W.2d at 685.

**2.** The other case relied upon by Dover, *W.R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76, 81 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r. e.), is distinguishable because it concerned a lease agreement, to which the UCC does not apply.

**3.** *See also Mack Trucks of Arkansas, Inc. v. Jet Asphalt & Rock Co.*, 246 Ark. 101, 437 S.W.2d 459 (1969) (disclaimer contained within warranty text under headings "Vehicle Warranty" and "Supplement to Mack Standard Warranty applicable to Mack Diesel Engines" held not conspicuous in part because neither title suggests the exclusion or modification of an implied warranty); *Blankenship v. Northtown Ford, Inc.*, 95 Ill.App.3d 303, 50 Ill.Dec. 850, 420 N.E.2d 167

(1981) (the heading "Factory Warranty" is misleading, and a disclaimer which follows a misleading heading cannot be deemed to comply with the UCC); *Seibel v. Layne & Bowler, Inc.*, 56 Or.App. 387, 641 P.2d 668, *rev. denied,* 293 Or. 190, 648 P.2d 852 (1982) (disclaimer held not conspicuous when only the paragraph heading "Warranty" stood out and suggested the making of the warranties, not their exclusion); *Dorman v. International Harvester, Co.*, 46 Cal. App.3d 11, 120 Cal.Rptr. 516 (2d Dist.1975) (inconspicuous disclaimer provision lacked a heading such as "DISCLAIMER OF WARRANTIES" which would adequately call the exclusionary language to the attention of the buyer); *Richards v. Goerg Boat & Motors, Inc.*, 179 Ind.App. 102, 384 N.E.2d 1084 (3d Dist.1979) (disclaimer language contained within warranty text held ineffective); B. Clark & C. Smith, The Law of Product Warranties ¶ 8.03[2] (1984) ("disclaimer paragraph should be conspicuously captioned as a "DISCLAIMER OF WARRANTIES," or the paragraph should at least capitalize all words relating to the disclaimer").

example, Section 2.316(b) does not mandate a written disclaimer of the implied warranty of merchantability but clearly provides that an oral disclaimer may be effective.[4] Similarly, Section 2.316(c)(3) allows an implied warranty to be excluded or modified by methods other than a conspicuous writing: course of dealing, course of performance, or usage of trade. When the buyer is not surprised by the disclaimer, insisting on compliance with the conspicuousness requirement serves no purpose. *See* R. Anderson, *Uniform Commercial Code* § 2–316:49–50 (1983). The extent of a buyer's knowledge of a disclaimer of the implied warranty of merchantability is thus clearly relevant to a determination of its enforceability. *See Singleton v. LaCoure*, 712 S.W.2d 757, 759 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (relying in part on buyer's acknowledgement to enforce disclaimer). The seller has the burden of proving the buyer's actual knowledge of the disclaimer.

■■■■ As this is a summary judgment case, the issue on appeal is whether Dover met its burden by establishing that there exists no genuine issue of material fact thereby entitling it to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). All doubts as to the existence of a genuine issue of material fact are resolved against the movant, and we must view the evidence in the light most favorable to the Petitioner. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). In support of its claim that Cate had actual knowledge of the disclaimer, Dover relies on Cate's deposition testimony, as follows:

Q: Do you know, or do you remember what kinds of warranties you received when you bought the lifts?

A: I may be wrong, but I think it was a five year warranty.

Q: What was your understanding of that warranty?

A: Any problems would be taken care of within the five year period.

Q: Do you know if that warranty was from Beech Equipment, or from Dover?

A: I believe it was from Dover.

Q: Did you receive any written documentation in regard to that warranty?

A: Yes, ma'am.

Although it is clear that Cate understood the warranty to extend for only five years, it is not clear that he understood any other limitations or exclusions. Merely providing a buyer a copy of documents containing an inconspicuous disclaimer does not establish actual knowledge. Dover has failed to establish that as a matter of law Cate had actual knowledge of the disclaimer.

We hold that, to be enforceable, a written disclaimer of the implied warranty of merchantability made in connection with a sale of goods must be conspicuous to a reasonable person. We further hold that such a disclaimer contained in text undistinguished in typeface, size or color within a form purporting to grant a warranty is not conspicuous, and is unenforceable unless the buyer has actual knowledge of the disclaimer. For the reasons stated herein, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

Concurring opinion by SPEARS, J., joined by MAUZY, J.

Concurring and dissenting opinion by RAY, J.

---

**4.** Tex.Bus. & Com.Code § 2.316, comment 1 (section seeks to protect buyer from unexpected and unbargained language of disclaimer by permitting exclusion of implied warranties only by conspicuous language or other circumstances which protect buyer from surprise); *see also* Weintraub, *Disclaimer of Warranties and Limi-*

*tation of Damages for Breach of Warranty Under the UCC*, 53 Tex.L.Rev. 60, 66 (1974); J. White & R. Summers, *Uniform Commercial Code* § 12–5, n. 76 (2d ed. 1980) (seller may effectively disclaim by orally explaining inconspicuous written disclaimer, provided word "merchantability" used).

APPENDIX

# YOU CAN TAKE ROTARY'S NEW 5-YEAR WARRANTY AND TEAR IT APART.

*And, when you're through, it'll be just as solid as the No. 1 lift company in America. Rotary. Not so with some of the other companies. They may offer you a multi-year warranty, too. But you're likely to discover it's limited to parts only.*

*And, hidden in all the mumbo-jumbo, you may find out—too late—that their beautifully worded "warranty" doesn't even cover major components... like power units. So what you really have is a great warranty that covers almost nothing.*

*We at Rotary are proud of the surface lift products we manufacture. And we don't have to "play it safe" when it comes to guaranteeing them. Here's what our new 5-year warranty says:*

## WARRANTY

All Rotary Surface Mounted Lifts are guaranteed to the original owner for five years from invoice date. Rotary Lift Division here after is known as "The Company". The Company shall replace for the full five years those parts returned to the factory which prove upon inspection by the Company to be defective. The Company shall pay for reasonable costs of transportation and labor for replacement of said parts for the first 12 months only. Purchaser will bear costs of transportation and labor for parts returned after the first year and the remainder of this warranty. This warranty shall not apply unless the product is installed, used and maintained in accordance with the Company's specifications as set forth in the Company's installation, operation and maintenance instructions.

This warranty does not cover normal maintenance or adjustments, damage

or malfunction caused by improper handling, installation, abuse, misuse, negligence or carelessness of operation.

This warranty is exclusive and is in lieu of all other warranties expressed or implied including any implied warranty of merchantability or any implied warranty of fitness for a particular purpose, which implied warranties are hereby expressly excluded.

The remedies described are exclusive and in no event shall the Company be liable for special, consequential or incidental damages for the breach of or delay in performance of the warranty.

This warranty shall be governed by the State of Indiana, and shall be subject to the exclusive jurisdiction of the Court of the State of Indiana in the County of Jefferson.

*American made*

**Rotary** ®

Exhibit A

SPEARS, Justice, concurring.

Although I concur in the court's opinion, I write separately to declare that the time has come for the legislature to consider the realities of the marketplace and prohibit all disclaimers of the implied warranties of merchantability and fitness.

These implied warranties, created by common-law courts long before the adoption of the U.C.C., developed to protect purchasers from losses suffered because of "the frustration of their expectations about the worth, efficacy, or desirability" of a product. W. Keeton, *Prosser and Keeton on The Law of Torts* § 95A (5th ed. 1984). Implication of these warranties into every goods contract, without regard to the parties' actual assent to their terms, served "to police, to prevent, and to remedy" unfair consumer transactions. Llewellyn, *On Warranty of Quality, and Society*, 39 Colum.L.Rev. 699, 699 (1936); *Humber v. Morton*, 426 S.W.2d 554, 557–58 (Tex.1968). These implied warranties also serve other important purposes: they create incentives to produce and market higher quality products; they discourage shoddy workmanship and unethical trade practices; and they place responsibility on those who profit from the sale of goods, have the greatest control over the products, and are better able to bear the risk of loss. *See Humber*, 426 S.W.2d at 562; *Decker & Sons v. Capps*, 139 Tex. 609, 610, 164 S.W.2d 828, 829 (1942). Section 2–316 of the U.C.C., however, subverts all of these purposes by giving sellers almost unlimited license to disclaim implied warranties.

We live in an age when sellers of goods "saturate the marketplace and all of our senses" with the most extraordinary claims about the worth of their products. Anderson, *The Supreme Court of Texas and the Duty to Read the Contracts you Sign*, 15 Tex.Tech.L.Rev. 517, 544 (1984); *Henningsen v. BloomField Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, 84 (1960). Yet, the same sellers under the *carte blanche* granted them by section 2–316 of the U.C.C. refuse to guarantee and indeed expressly disclaim that their products are merchantable or even fit for their intended

purposes. Under section 2–316, not much is actually required for an effective disclaimer. To disclaim the implied warranty of merchantability the seller need only include the word "merchantability" in a conspicuous fashion. Tex.Bus. & Com.Code Ann. § 2.316(b) (Vernon 1968). To disclaim the implied warranty of fitness the seller must use a writing and must make the disclaimer conspicuous. *Id.* at § 2.316(2). No particular form of words is needed to disclaim an implied warranty of fitness, nor does section 2.316 require the buyer to be actually aware of the disclaimer before it will be enforced. All implied warranties can be disclaimed by the mere inclusion of expressions like "as is" or "with all faults". *Id.* at § 2.316, comment 1. Finally, as today's majority makes clear, section 2.316 does not even require the disclaimer to be conspicuous if the buyer's actual knowledge of the disclaimer can be shown.

By establishing specific "requirements" for disclaimers, section 2.316 ostensibly "seeks to protect a buyer from unexpected and unbargained language of disclaimer." Tex.Bus. & Com.Code § 2.316, comment 1 (Vernon 1968). In reality, however, section 2.316 completely undermines implied warranties. Implicitly, section 2.316 adopts the position that disclaimers should be enforced because society benefits when parties to a contract are allowed to set *all* the terms of their agreement. The problem with this position, and with section 2.316 generally, is two-fold: it ignores the fact that governmental implication of protective terms into private contracts is commonplace (e.g. the *implied* warranties of merchantability and fitness); and, more importantly, it rests on the faulty premise that contractual disclaimers are generally freely bargained for elements of a contract.

Freedom of contract arguments generally, and section 2.316 specifically, presuppose and are based on "the image of individuals meeting in the marketplace" on equal ground to negotiate the terms of a contract. Rakoff, *Contracts of Adhesion: An Essay in Reconstruction*, 96 Harv.L. Rev. 1174, 1216 (1983). At one time, this image may have accurately reflected marketplace realities. However, the last half

of the twentieth century has witnessed "the rise of the corporation" and, increasingly, the displacement of physical persons as sellers in consumer and commercial contracts. Phillips, *Unconscionability and Article 2 Implied Warranty Disclaimers,* 62 Chi.–Kent L.Rev. 199, 239 (1985). This development has led to innumerable situations in which consumers deal from an unequal bargaining position, the most prominent example being the ubiquitous standard form contract which is now used by most sellers of goods and which invariably contains an implied warranty disclaimer. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 355 (Tex.1987); *Henningsen,* 161 A.2d at 86–89; Slawson, *Standard Form Contracts and Democratic Control of Lawmaking Power,* 84 Harv.L.Rev. 529, 529 (1971) ("standard form contracts probably account for more than ninety-nine percent of all the contracts now made"); L. Vold, *Handbook of the Law of Sales* 447 (2d ed. 1959) (dramatic rise in corporate power has yielded the standard form contract whose terms are drafted by the seller and usually contain implied warranty disclaimers).

The great majority of buyers never read an implied warranty disclaimer found in a standard form contract.[1] Even when implied warranty disclaimers are read, their legal significance is not generally understood. Such disclaimers include unfamiliar terminology (e.g. "implied warranty of merchantability"), and comprehending their legal effect requires one not only to understand what substantive rights are involved, but also to grasp that these rights have been lost via the disclaimer. Phillips, *Unconscionability and Article 2 Implied Warranty Disclaimers,* 62 Chi.–Kent

L.Rev. 199, 243 (1985); *see also* Federal Trade Commission, *Facts for Consumers* (Mar. 23, 1979) (more than 35% of those surveyed mistakenly believed that an "as is" disclaimer meant the dealer would have to pay some, if not all, costs if a car broke down within 25 days of a sale). Finally, even if a buyer reads and understands an implied warranty disclaimer, chances are he will be without power to either strike these terms or "shop around" for better ones. If the buyer attempts the former, he will likely run into an employee who is unauthorized to alter the form contract; if he attempts the latter, he will likely confront a competitor who offers substantially the same form terms. *Henningsen,* 161 A.2d at 87. In short, the "marketplace reality" suggests that freedom of contract in the sale of goods is actually nonexistent; a buyer today can either take the contract with the disclaimer attached or leave it and go without the good.

Increasingly, the courts and legislatures of other states have acted to ameliorate or to avoid entirely the harsh consequences wrought by section 2.316. Several courts have refused to enforce disclaimers, on public policy grounds, unless the disclaimer sets forth the particular qualities and characteristics of fitness being waived, is clearly brought to the buyer's attention and is expressly agreed to by the buyer. *See, e.g., Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *Jensen v. Siegel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983); *Louisiana Nat'l Leasing Corp. v. ADF Serv., Inc.,* 377 So.2d 92 (La.1979); *Scientific Application, Inc. v. Delkamp,* 303 N.W.2d 71 (N.D. 1981); *Zabriskie Chevrolet, Inc. v. Smith,*

---

1. *See* RESTATEMENT (SECOND) OF CONTRACTS § 211, Comment b (1981):

A party who makes regular use of a standardized form of agreement does not ordinarily expect his customers to understand or even to read the standard terms. One purpose of standardization is to eliminate bargaining over details of individual transactions, and that purpose would not be served if a substantial number of customers retained counsel and reviewed the standard terms ... Customers do not in fact ordinarily understand or even read the standard terms.

*Id.; see also* Rakoff, *Contracts of Adhesion: An Essay in Reconstruction,* 96 Harv.L.Rev. 1174, 1179 n. 21 (1983) (citing numerous commentators who declare that standard terms not read or understood, and some empirical studies asserting same proposition); Phillips, *Unconscionability and Article 2 Implied Warranty Disclaimers,* 62 Chi.–Kent L.Rev. 199, 243 (1985) (many sales do not involve a written sales contract that is presented before the goods change hands; usually, the disclaimer is inside the package and is not seen until after the sale is completed).

99 N.J.Super. 441, 240 A.2d 195 (1968); *Woods v. Secord,* 122 N.H. 323, 444 A.2d 539 (1982); *Seibel v. Layne & Bowler, Inc.,* 56 Or.App. 387, 641 P.2d 668 (1982); *Berg v. Stromme,* 79 Wash.2d 184, 484 P.2d 380 (1971).

A number of other courts have found even conspicuous disclaimers to be unconscionable under section 2–302 of the U.C.C., despite the disclaimer's compliance with § 2–316. *See, e.g., FMC Fin. Corp. v. Murphree,* 632 F.2d 413 (5th Cir.1980); *A & M Produce Co. v. FMC Corp.,* 135 Cal. App.3d 473, 186 Cal.Rptr. 114 (1982); *Chrysler Corp. v. Wilson Plumbing Co.,* 132 Ga.App. 435, 208 S.E.2d 321 (1974); *Hahn v. Ford Motor Co.,* 434 N.E.2d 943 (Ind.App.1982); *Sarfati v. M.A. Hittner & Sons,* 35 A.D.2d 1004, 318 N.Y.S.2d 352 (1971), *aff'd* 30 N.Y.2d 613, 331 N.Y.S.2d 40, 282 N.E.2d 126 (1972); *Evans v. Graham Ford, Inc.,* 2 Ohio App.3d 435, 442 N.E.2d 777 (1981); *Eckstein v. Cummins,* 41 Ohio App.2d 1, 321 N.E.2d 897 (1974); *Durham v. Ciba–Geigy Corp.,* 315 N.W.2d 696 (S.D.1982); *Rottinghaus v. Howell,* 35 Wash.App. 99, 666 P.2d 899 (1983); *See generally* Phillips, *Unconscionability and Article 2 Implied Warranty Disclaimers,* 62 Chi.–Kent L.Rev. 199, 262–63 (1985) (arguing that § 2–302 should be aggressively applied to invalidate disclaimers of implied warranties, and concluding that such disclaimers should be "per se unconscionable" in consumer cases).

Several states have gone even further by enacting protective legislation which forbids implied warranty disclaimers or by repealing section 2–316 of the Code. *See, e.g.,* ALA.CODE §§ 7–2–316(5), 7–2–719(4) (1975); CONN.GEN.STAT. § 42–179 (1984); D.C.CODE ANN. § 28:2–316.1 (1984); KAN.STAT.ANN. § 50–636(a) (1983); ME. REV.STAT.ANN. tit. 11, § 2–316 (1973); MD.COM.LAW ANN. § 2–316 (1982); MASS.ANN.LAWS ch. 106, § 2–316A (1984); MINN.STAT.ANN. § 336.2–316 (1982); 1976 Miss.Laws, Ch. 385, Preamble; MISS.CODE ANN. § 11–7–18; VT.STAT. ANN. tit. 9A, § 2–316(5) (1981); WASH. REV.CODE § 62A.2–316(4) (1966); W.VA. CODE § 46A–6–107 (1980); *see also* Uniform Consumer Credit Code § 2.308 (1974);

Model Consumer Credit Act §§ 2.503, 8.108 (1973).

Finally, the federal Magnuson–Moss Warranty Act places severe limits on the seller's ability to disclaim implied warranties in the sale of consumer goods. 15 U.S.C. § 2301–12 (1982). The Act's most important clause essentially provides that *if* a seller gives a written express warranty, he cannot disclaim the implied warranties. *Id.* § 2308(a). The Act effectively prohibits the common practice of a seller boldly announcing an express warranty of limited value and then disclaiming the more valuable implied warranties, leaving the consumer with a delusive remedy at best.

Our own prior decisions reflect a growing hostility toward attempted disclaimers of important rights. For example, in *Crowell v. Housing Authority of City of Dallas,* we held that an exculpatory provision exempting a landlord from liability for negligence was void as against public policy because of the disparate bargaining positions of the parties and the "take it or leave it" nature of the contract. 495 S.W.2d 887, 889 (Tex.1973). More recently, in *Melody Home Mfg. Co. v. Barnes,* we created a new common-law implied warranty of good and workmanlike repair and further held that the new warranty could not be waived or disclaimed. 741 S.W.2d 349, 354–55 (Tex.1987). In so holding, we recognized that "[i]t would be incongruous if public policy required the creation of an implied warranty, yet allowed the warranty to be disclaimed and its protection eliminated merely be a pre-printed standard form disclaimer or an unintelligible merger clause" *Id.* at 355; *see also Crowder v. Vandendeale,* 564 S.W.2d 879, 881 (Mo. 1978) (boilerplate waiver provisions, even if conspicuous, would not be allowed to extinguish so important a creature of public policy as the implied warranty of habitability and workmanship).

In other contexts, the Texas legislature has refused to allow the rights and remedies it creates to fall victim to skillfully drafted waiver provisions or disclaimers. *See, e.g.,* Tex.Bus. & Com.Code Ann. § 17.42(a) (Vernon Supp.1990) (DTPA waiv-

er unenforceable and void as against public policy unless defendant proves consumer is not in a significantly disparate bargaining position, the consumer is represented by legal counsel, and the waiver is by express provision in a written contract signed by both consumer and his counsel); Tex.Rev. Civ.Stat.Ann. art. 5221f, § 18 (Vernon Supp.1987) (waiver of the provisions of the Manufactured Housing Standards Act unenforceable and void); Tex.Bus.Com. Code Ann. §§ 9.504, 9.506 (Vernon Supp. 1985) (debtor may not waive, until after default, rights to notice of sale and to redemption of collateral); Tex.Bus.Comm. Code Ann. § 2.719(c) (presumptively invalidating disclaimers of liability for personal injuries in contracts for the sale of consumer goods).

The realities of the modern marketplace demand that the legislature prohibit implied warranty disclaimers by repealing section 2–316 of the U.C.C. Without such action, Texas courts will be forced to rely on "covert tools", such as the unconscionability provision in section 2–302 or the "conspicuous" requirement in section 2–316, to reach a just and fair result in disclaimer suits. When these tools are used, guidance, predictability and consistency in the law is sacrificed, while limited judicial resources are spent policing unjust bargains that could have been avoided. Were it up to the judicial branch, the courts could declare such disclaimers void as against public policy. If the legislature has the interests of Texas citizens at heart, it will repeal section 2–316 because, no matter how conspicuous, such disclaimers are abusive of consumers.

MAUZY, J., joins in this concurring opinion.

RAY, Justice, concurring and dissenting.

I concur in that portion of the court's opinion requiring that a written disclaimer of the implied warranty of merchantability must be conspicuous to a reasonable person. I write separately, however, to take issue with the court's immediate erosion of that standard by permitting a showing of actual knowledge of the disclaimer to override a lack of conspicuousness.

The statute, on its face, provides for no actual knowledge exception. There is no room for judicial crafting of those omitted by the legislature. I would hold that the extent of a buyer's knowledge of a disclaimer is irrelevant to a determination of its enforceability under Section 2.316(b) of the UCC.[1]

The effect of actual knowledge is subject to debate among leading commentators on commercial law. The purpose of the objective standard of conspicuousness adopted by the court today reflects the view that "the drafters intended a rigid adherence to the conspicuousness requirement in order to avoid arguments concerning what the parties said about the warranties at the time of the sale." J. White and R. Summers, *Uniform Commercial Code* § 12–5 (2d ed. 1980). An absolute rule that an inconspicuous disclaimer is invalid, despite the buyer's actual knowledge, encourages sellers to make their disclaimers conspicuous, thereby reducing the need for courts to evaluate swearing matches as to actual awareness in particular cases. *See* W. Powers, *Texas Products Liability Law* § 2.0723 (1989). Today's decision condemns our courts to a parade of such cases.

1. This approach is taken in *Rehurek v. Chrysler Credit Corp.,* 262 So.2d 452 (Fla.Dist.Ct.App.), *cert. denied,* 267 So.2d 833 (Fla.1972) (inconspicuous disclaimer ineffective even though the buyer admitted having read it before the purchase).