W. Ralph HOLLOWAY, et al., Appellants,

v.

ATLANTIC RICHFIELD COMPANY and
B & A Pipeline Company, Appellees.

No. 12–97–00075–CV.

Court of Appeals of Texas,
Tyler.

April 28, 1998.

Deborah J. Race, Michael G. Carroll, Tyler, for appellants.

B.C. Boren, Dallas, Rex A. Nichols, Jr., Longview, for appellees.

HOLCOMB, Justice.

Appellants, Ralph Holloway, et al. ("Holloway)[1] appeal a summary judgment in favor of Appellees, Atlantic Richfield Company ("Arco") and B & A Pipeline Company ("B & A"). Holloway complains in one point of error that the trial court erred in granting Arco's and B & A's motion for summary judgment on the following causes of action and issues of law: a) breach of fiduciary duty; b) Arco's breach of contract; c) B & A's breach of contract; d) corporate fiction; and e) collateral estoppel. We will affirm in part and reverse and remand in part.

In the early 1980's, Henderson Clay Products ("HCP") created B & A, a wholly owned subsidiary, to market its oil and gas. The two entities entered into a contract wherein HCP dedicated its gas to B & A at the maximum lawful price per MMbtu, which was $6.50 at the time. The next day, B & A entered into a ten-year contract with Ensearch d/b/a Lone Star Gas ("Ensearch") in which B & A dedicated its gas to Ensearch to be purchased at an agreed price. Both contracts required the purchaser to take, or pay for if not taken, 85% of the delivery capacity of the wells. HCP then entered into operating agreements with numerous interest owners including Holloway. The operating agreements provided that an interest owner had the right to take in kind or separately dispose of his oil and gas, and that HCP, as the operator, had the right, but not the obligation, to purchase the oil and gas of the interest owner if the owner did not take or sell it himself. HCP was obligated to sell the oil and gas, if it did undertake to sell it, "at the best price obtainable in the area for such production." The interest owners' minerals were not dedicated under either the HCP/B & A contract or B & A/Ensearch contract.

Ensearch breached its contract when oil and gas prices plummeted. B & A filed suit to enforce the contract, and according to Holloway, B & A assured him that it was protecting his interests in doing so and that he would get his proportionate share of the settlement or judgment. Arco purchased HCP and B & A and directed B & A to settle with Ensearch, which it did. As a consequence of the settlement, the previous contracts between B & A and Ensearch and B & A and Arco were amended. Pursuant to the settlement, Ensearch took substantially higher quantities of gas at a lower price, $2.90 per MMbtu, and the take-or-pay provision was deleted from the B & A/Arco contract. Arco marketed the mineral interest owners' oil and gas at the lower price for a short period of time, then completely discontinued doing so. The underlying suit was brought by mineral interest owners under several operating agreements against Arco and B & A. Holloway's main basis for complaint was that B & A amended its contract with Ensearch and Arco amended its contract with B & A, to the mineral interest owners' detriment.

Arco and B & A filed a motion for summary judgment, which the trial court granted on two causes of action, breach of good faith and fair dealing and tortious interference with a contract. The court also declared that Arco and B & A were not collaterally estopped by a judgment rendered in a Texarkana district court. The trial court stayed the matter until the Texarkana Court of Appeals disposed of some of the same legal issues in *Atlantic Richfield Company, et al. v. The Long Trusts v. Atlantic Richfield Co., et al.*, 860 S.W.2d 439 (Tex.App.—Texarkana 1993, writ denied). After the court of appeals issued its opinion, the trial court granted summary judgment for Arco and B & A "as to Plaintiffs' claims for relief based on or arising out of Defendants' alleged amendment of, waiver of the terms of, or failure to enforce" the contracts between B & A and Ensearch and Arco and B & A.

[1] For brevity sake, we are only naming one of the thirty Appellants in this case.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists thereby entitling him to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate*, 790 S.W.2d at 562. We must, therefore, view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). When the trial court does not state the specific grounds upon which the summary judgment was granted, the reviewing court must consider whether any theories set forth in the motion will support a summary judgment. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993). Summary judgment must be affirmed if any of the theories advanced are meritorious. *Id.* In the instant case, the trial court did not specify upon what bases it granted judgment for Arco and B & A.

## Arco's Breach of Fiduciary Duty

In his first subpoint, Holloway asserts that the trial court erred when it granted summary judgment for Arco on breach of fiduciary duty. He maintains that the trial court could not have granted summary judgment on this issue since Arco failed to move for summary judgment on that specific cause of action. We disagree. Arco moved for summary judgment after Holloway's fourth amended petition, but did not seek judgment on breach of duty because it had not yet been pled. After the Texarkana Court of Appeals issued *The Long Trusts'* opinion, Holloway filed his fifth amended petition and added breach of fiduciary duty as an additional cause of action. In its second motion for summary judgment, Arco "renewed" its motion, but also urged the trial court to follow *The Long Trusts'* holding on the issue of breach of fiduciary duty. Consequently, if an element of that cause of action was negated

as a matter of law, it was entitled to summary judgment on that issue.

■ Holloway next argues that summary judgment was improper because he raised fact issues as to whether or not Arco breached its fiduciary duty "by failing to enforce its contractual rights and remedies, and waiving same while acting as Plaintiffs' marketing agent, then abandoning its position and leaving Plaintiffs to market their own gas." He cites *Johnston v. American Cometra, Inc.*, 837 S.W.2d 711, 716 (Tex.App.—Austin 1992, writ denied) for the proposition that "the scope of [the operator's] duties to appellants is an undetermined fact issue that precludes summary judgment ..." But we distinguish *Cometra* from the instant case because in that case there was a disputed fact issue concerning the operator's agency relationship with the nonoperators where, in executing the gas purchase contract, the nonoperators actually *dedicated* their reserves to the contract. *Id.* at 714. In this case, it is undisputed that Holloway's gas was *not* dedicated. Neither was Holloway a party to nor did he have an interest in the Arco/B & A contract or the B & A/Ensearch contract. We recognize that a duty did arise when Arco marketed Holloway's gas. But it was a limited duty to account for the monies received for selling his gas, to avoid conflicts of interests, and not to act as an adverse party in its capacity as the seller of his gas. *See The Long Trusts*, 860 S.W.2d at 445. For this reason, we hold that Arco had no fiduciary duty to Holloway to enforce its contract with B & A.

## Arco's Breach of Contract

■ In his second subpoint, Holloway argues that the trial court erred when it granted summary judgment for Arco on his breach of contract cause of action. Holloway alleges that Arco breached its contract with him by not marketing his gas at "the best price obtainable in the area," as required by the operating agreements. He further contends that the best price obtainable in the area was the original gas contract price between B & A and Ensearch, and that when Arco amended its contract with B & A, it violated that contract provision. Arco responds that the best price obtainable could not be the maxi-

mum lawful price referred to in the contract because Holloway was not a party to the contract and had no legal right to assert that Arco and B & A were not free to amend the contract. We agree. As a matter of law, when a gas well owner reserves the right to take the production of the well in kind, the production of that well is not dedicated. If the gas is not dedicated, the owner cannot contend that the operator is obligated to him under the original contract between the operator and its subsidiary or its subsidiary and the utility company. *B & A Pipeline Co. v. Dorney v. Enserch, et al.,* 904 F.2d 996, 999–1000 (5th Cir.1990); *see also The Long Trusts,* 860 S.W.2d at 443. It follows, therefore, that the best price obtainable could have been, but was not necessarily, the unenforced contract price.

■ Arco offered the testimony of a B & A employee as its only summary judgment evidence that it obtained the best price obtainable for Holloway's gas. The employee stated that the company paid "at or above the price that a purchaser who is not contractually bound to buy gas would pay a seller who is not contractually bound to sell gas for similar quantities of gas in the area under similar circumstances." In other words, Arco proved that it sold Holloway's gas for amounts equal to or exceeding fair market value for undedicated gas, which Holloway did not controvert. We note that Arco, in its first motion for summary judgment, admitted that it was "the Court's duty to define best price obtainable." And Arco cited no authority supporting its position that market price and best price obtainable are synonymous terms. We conclude that they are not. It is possible that by the exercise of reasonable effort on the part of a seller, more favorable terms than fair market value could be obtained for the gas produced. *See Amoco Production Co. v. First Baptist Church of Pyote,* 579 S.W.2d 280, (Tex.Civ.App.—El Paso 1979), *writ ref'd n.r.e per curiam,* 611 S.W.2d 610 (Tex.1980).

Although we have held that Arco breached no duty by choosing not to seek the enforcement of the B & A contract, Arco offered no evidence that the contract price was not the best price obtainable or that it could not have obtained that price for Holloway. And although the price Arco obtained for Holloway's gas may have been the best price obtainable in the area, summary judgment was not proper without evidence of that fact, and was therefore improperly granted.

### B & A's Breach of Contract

■ In his third subpoint, Holloway maintains that B & A breached its contract with Arco when it failed to either take or pay for the minimum quantities of gas provided for in the contract between Arco and B & A. We agree that B & A breached its contract with Arco. We disagree, however, that Holloway has standing to complain of that breach. As we pointed out earlier in this opinion, Holloway had no vested interest in, was not a party to, nor was his gas dedicated to either the Arco/B & A contract or the B & A/Enserch contract. The trial court properly granted summary judgment on this issue.

### Corporate Fiction—Arco and B & A

■ In his petition, Holloway complained that Arco and B & A maintained and used their corporate form and separateness as a sham for the purpose of perpetrating a fraud. He asked that their corporate separateness be disregarded when determining liability for the pled causes of action. Arco prayed for summary judgment on this issue on the grounds that "the law in Texas is quite clear that a parent corporation cannot conspire with its wholly owned subsidiary ..." We agree with the Texarkana Court of Appeals' holding that this is true only in the antitrust context and not in common law conspiracies. *The Long Trusts,* 860 S.W.2d at 447; *see also Metropolitan Life Ins. Co. v. La Mansion Hotels,* 762 S.W.2d 646, 651–52 (Tex.App.—San Antonio 1988, writ dism'd w.o.j.). Whether Holloway may pierce the corporate veil in order to hold one company liable for the other company's alleged wrongdoing is not before us, however, because the trial court did not grant summary judgment on this issue.[2]

---

**2.** Although Holloway asks that we reverse the
trial court's summary judgment regarding corpo-

### Collateral Estoppel

■ In his last subpoint, Holloway asserts that collateral estoppel should apply with respect to the relationship of Arco and B & A. He argues that the same issue was litigated in *The Long Trusts*, and that the companies are now estopped from denying that Arco used B & A as a sham to perpetrate a fraud. The doctrine of collateral estoppel, or issue preclusion, precludes the relitigation of identical issues of fact that have actually been litigated. *Coalition of Cities for Affordable Utility Rates v. Public Util. Comm'n of Tex.*, 798 S.W.2d 560, 563 (Tex. 1990). In order to invoke this doctrine, one must establish the following: 1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; 2) facts were essential to the judgment in the prior action; and 3) parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). Arco argues that these criteria were not met in this case, and we agree.

■ When a plaintiff attempts to pierce the corporate veil on the theory of fraud or sham to perpetrate a fraud, he must show that the corporation perpetrated an actual fraud on the plaintiff, himself. TEX.BUS. CORP.ACT ANN. art. 2.21 § (A)(2) (Vernon Supp.1997). The issue of whether Arco used B & A as a sham to perpetrate a fraud against Holloway is necessarily dependent upon the facts of this particular case. Holloway was not a plaintiff in *The Long Trusts*. *The Long Trusts'* jury was not provided with any evidence relating to any harm or injustice to Holloway, nor was the jury asked to decide that issue. We conclude that principles of collateral estoppel do not support Holloway's claim of alter ego because the issue of whether or not Arco used B & A to perpetrate a fraud against *Holloway* was not essential to the judgment rendered in *The Long Trusts*. The trial court properly granted Arco's and B & A's request that they not be collaterally estopped from denying a corporate fiction.

rate fiction, Arco and B & A admit that the relationship between them "remains open,"

We *affirm in part and reverse and remand in part* for further trial court proceedings in accordance with this opinion.

since there is no final order of the trial court to appeal.