In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00029-CR


______________________________




STEVIE WALKER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fourth Judicial District Court


Rusk County, Texas


Trial Court No. CR07-148 




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Stevie Walker appeals his conviction by a jury for possession of a controlled substance. 
After observing Walker fail to properly signal two turns, Officer Brian Pool, a police officer with
the Henderson Police Department, and Officer Travis Shirley, who was in field officer training,
stopped Walker's vehicle. During the temporary detention, Pool discovered that Walker was in
possession of a rock of crack cocaine. Walker's sole issue on appeal is that the trial court erred in
denying his motion to suppress.

 When reviewing a trial court's decision to grant or deny a motion to suppress, we afford
almost total deference to a trial court's determination of the historical facts supported by the record,
especially when the trial court's fact-findings are based on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review questions of law de novo. 
Guzman, 955 S.W.2d at 89; Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).

 Walker contends that Pool lacked, at the time of the traffic stop, specific, articulable facts to
support a reasonable suspicion Walker was engaged in criminal activity. (1) The trial court conducted
a hearing outside the presence of the jury before the trial on the merits. Both Pool and Walker
testified at the hearing as follows. 

 While on patrol, Pool received a dispatch from Officer Chad Taylor. Taylor was conducting
surveillance of a residence of a person suspected of selling narcotics. Taylor provided Pool with a
description of a vehicle leaving that residence. Pool arrived at the residence just as a vehicle
matching that description was leaving. Pool testified that he followed the vehicle for several blocks,
during which time the vehicle, which was being driven by Walker, failed to signal a turn "at all" at
one intersection. Walker testified he did signal his turn at the first intersection. At another
intersection, Pool testified the vehicle "did signal, but not within the required distance, not within
100 feet." 

 After observing these traffic violations, Pool made a traffic stop. Pool conducted a "pat-down" search and did not discover any weapons. Pool testified he told Walker: "The best thing you
can do is to go ahead and give us what you've got illegally in your pocket." Walker testified he
interpreted the statement as a command. Walker then handed Pool a "white, off-white" rock from
his shirt pocket which was ultimately determined to be crack cocaine. The trial court denied
Walker's motion to suppress.

 According to Walker, the "first question is whether Taylor had enough information to justify
his order to Pool to follow Walker for anticipated traffic offenses." Walker, though, has failed to
provide us with any authority that Pool's conduct in following Walker, before the traffic stop,
involved a search or a seizure in violation of the Fourth Amendment. We know of none.

 Next, Walker challenges the traffic stop as an unreasonable detention. Under Terry v. Ohio,
392 U.S. 1 (1968), and its progeny, the police must be able to articulate specific facts that support
a reasonable suspicion that the suspect is engaging in, or is about to engage in, criminal activity.
"[T]he police officer must be able to point to specific and articulable facts which, taken together with
rational inferences from those facts, reasonably warrant that intrusion." Davis v. State, 947 S.W.2d
240, 242 (Tex. Crim. App. 1997). "A routine traffic stop resembles an investigative detention." 
State v. Cardenas, 36 S.W.3d 243, 246 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd). A law
enforcement officer may lawfully stop and detain a person for a traffic violation committed in the
presence of the officer. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Zervos v.
State, 15 S.W.3d 146, 151 (Tex. App.--Texarkana 2000, pet. ref'd). 

 An objectively valid traffic stop is not unlawful simply because the detaining officer had
some ulterior motive for making it. A "pretext stop" refers to a detention in which an individual is
detained for one offense only because law enforcement officials desired to investigate that individual
for a different offense--for which they did not have valid legal grounds to stop or arrest. Garcia,
827 S.W.2d at 939-40; Randle v. State, 89 S.W.3d 839, 843 (Tex. App.--Houston [1st Dist.] 2002,
pet. ref'd). The Texas Court of Criminal Appeals has rejected the pretext stop doctrine. See
Crittenden v. State, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995); Garcia, 827 S.W.2d 937; see also
Whren v. United States, 517 U.S. 806, 809-10 (1996) (question is whether officer could have made
stop for reason given). Thus, the fact that Pool may have subjectively had another motive for the
detention does not render the detention unreasonable. The Texas Transportation Code provides, "An
operator intending to turn a vehicle right or left shall signal continuously for not less than the last
100 feet of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104(b)
(Vernon 1999). Pool testified he personally observed Walker fail to signal a turn entirely and fail
to signal 100 feet or more before another turn. The trial court had discretion to believe Pool's
testimony over Walker's testimony. A failure to properly signal a turn is sufficient to justify a traffic
stop. See, e.g., Reha v. State, 99 S.W.3d 373, 376 (Tex. App.--Corpus Christi 2003, no pet.); Krug
v. State, 86 S.W.3d 764, 766 (Tex. App.--El Paso 2002, pet. ref'd). Pool had an objectively
reasonable basis to detain Walker--a personally observed violation of the Texas Transportation
Code--and, therefore, had reasonable suspicion to temporarily detain Walker. 

 Because Pool had reasonable suspicion to detain Walker for failing to signal a turn, we affirm
the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 15, 2008

Date Decided: July 16, 2008


Do Not Publish

1. Walker does not challenge the actions of Pool after the initial stop. Walker argues merely
that the evidence seized during the stop was tainted by the initial stop's illegality.


 indemnity agreement that has the effect of relieving
a party, in advance, of liability for its own negligence. See Dresser Indus., Inc. v. Page Petroleum,
Inc., 853 S.W.2d 505, 507-09 (Tex. 1993). Under the express negligence doctrine, a party who
wishes to contractually shift risk from itself for the consequences of its future negligence must
specifically express that intent within the four corners of an agreement. See Ethyl Corp. v. Daniel
Constr. Co., 725 S.W.2d 705, 707-08 (Tex. 1987); Dresser Indus., Inc. v. Page Petroleum, Inc., 853
S.W.2d at 508. The fair notice requirement of conspicuousness requires that the release or indemnity
be written in such a manner that a reasonable person against whom it is to operate should have seen
it. Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d at 510-11. For example, language in
capital headings, language in contrasting type or color, and language in an extremely short document
such as a telegram, is considered conspicuous. Id. The question of compliance with both the express
negligence and the conspicuousness doctrines is a question of law for the court. Id. at 510. 

 S&P and Guerrero contend we are precluded from considering this issue under the doctrine
of the law of the case. This doctrine is defined as that principle under which questions of law
decided on appeal to a court of last resort will govern the case throughout its subsequent stages.
Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); Trevino v. Turcotte, 564 S.W.2d 682, 685
(Tex. 1978). The application of this doctrine is flexible and must always be addressed to the
discretion of the court and determined according to the particular circumstances of the case. See
Kempner v. Huddleston, 90 Tex. 182, 185, 37 S.W. 1066, 1067 (1896), cited with approval in Ex
parte Granger, 850 S.W.2d 513, 516 (Tex. Crim. App. 1993). The court in the former appeal of this
case did not consider, as a question of law, whether a liability release such as the one relied on by
S&P and Guerrero must satisfy the fair notice requirements of conspicuousness and the express
negligence doctrine in order to be an effective waiver. Nor did the court in that appeal consider
whether a liability release that must satisfy the fair notice requirements and does not do so may in
fact be ratified and, if so, under what conditions. These are the central issues in this appeal, and we
conclude that we may review them.

 S&P and Guerrero contend that the benefit plan agreement at issue in this case does not
release them, in advance, of liability for their own negligence, and thus the fair notice requirements
of  conspicuousness  and  the  express  negligence doctrine  do  not  apply.  For  support,  they  rely
on In re H.E. Butt Grocery Co., 17 S.W.3d 360 (Tex. App.-Houston [14th Dist.] 2000, orig.
proceeding.) (cited herein as "HEB"). In HEB, plaintiff Swinton signed an agreement when he was
hired, which waived his right to sue HEB, his employer, for negligence in return for specified
benefits for future workplace injuries. Swinton was hurt while working, and he sued. Responding
to Swinton's express negligence argument, the court stated that the doctrine did not apply because
the benefit agreement that he executed with HEB did not attempt to relieve HEB of the consequences
of its negligence. Id. at 378. "To the contrary," the court stated, "Swinton's 'waiver' and 'release'
obligated HEB to pay plan benefits, regardless of its negligence." Id. The HEB court's rationale
seems to be that because HEB had agreed under the terms of its benefit plan to pay certain limited
benefits for workplace injuries it negligently caused (as well as for those injuries it did not cause),
HEB was not seeking to relieve itself of potential liability in advance. Similarly, S&P and Guerrero
here respond that, because S&P was not relieved of all liability; that is to say, because S&P was
obligated to pay at least limited plan benefits, the benefit plan is not one that releases them in
advance of liability for their own negligence. We disagree.

 We first note that HEB was decided before Lawrence v. CDB Servs., Inc., 44 S.W.3d 544,
in which the Texas Supreme Court expressly stated that the employee's pre-injury release of
negligence claims against his employer there at issue, which was of the same effect as the releases
in our case and HEB, could be enforced only if it satisfied both the express negligence and
conspicuousness requirements. See id. at 553-54. 

 Moreover, the rationale of S&P and Guerrero and the HEB court rests on an irrelevant
distinction between those plans that release an employer of all liability and those plans that only
release an employer of any liability in excess of plan benefits. As stated previously, the fair notice
requirements of conspicuousness and the express negligence doctrine apply to any contractual release
or indemnity agreement that has the effect of relieving a party, in advance, of liability for its own
negligence. See Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d at 507-09. Thus, in order
to determine whether our release in fact relieved S&P and Guerrero of liability for their own
negligence, we need only consider the extent of their potential liability before and after Reyes signed
the release. Before Reyes signed the release, when he possessed all his common-law rights against
S&P and Guerrero, S&P and Guerrero were subject to the full extent of any liability their negligence
might cause. After S&P obtained Reyes' apparent consent to the benefit plan designed to waive his
common-law rights, S&P's and Guerrero's liability for their own potential negligence was reduced
from a theoretically limitless amount to the minimum amount necessary to meet the specific limited
benefits outlined in the benefit plan. As a coemployee, Guerrero's liability for his own future
negligence after the waiver was to be basically zero, because he was not obligated to pay anything
at all. 

 Whether an employer's common-law liability for negligence will be nothing, or less than the
benefit plan covers, or more than the plan covers, obviously cannot be known before the negligent
act and the resulting injury or death. Nevertheless, at least where such common-law liability is
greater than the benefits under the benefit plan, there can be no doubt that the effect of the worker's
release is to relieve that employer of at least a part of its future liability for its own negligence. The
fact that the employer has an alternative compensation scheme in place, as the benefit plan is
characterized by S&P and Guerrero, does not mean that an employer is not potentially relieved of
some liability. We can see no reason why employers should not be required to comply with the fair
notice requirements of conspicuousness and the express negligence doctrine before employees are
deemed to have waived even some of their common-law rights. Because the benefit plan at issue
in this case is a contractual attempt to relieve parties in advance of at least some liability for their
own negligence, we hold that it is subject to the fair notice requirements of conspicuousness and the
express negligence doctrine.

 We need not consider whether the benefit plan does in fact satisfy the fair notice
requirements of conspicuousness and the express negligence doctrine, because S&P and Guerrero 
concede that if the fair notice requirements of conspicuousness and the express negligence doctrine
apply, the benefit plan agreement does not comply with the conspicuousness requirement. A liability
release or indemnity agreement that is deficient as to the fair notice requirements is unenforceable
as a matter of law unless the employee has actual knowledge. See Douglas Cablevision IV, L.P. v.
Southwestern Elec. Power Co., 992 S.W.2d 503, 510 (Tex. App.-Texarkana 1999, pet. denied). 
Thus, the benefit plan agreement at issue here is unenforceable as a matter of law unless S&P and
Guerrero can prove that Reyes had actual knowledge. See Dresser Indus., Inc. v. Page Petroleum,
Inc., 853 S.W.2d at 508 n.2 (citing Cate v. Dover Corp., 790 S.W.2d 559, 561 (Tex. 1990)). (1) As
summary judgment evidence, S&P produced an affidavit from Ruby Perez, the person responsible
for conducting safety meetings and orientations for S&P employees. In her affidavit, Perez states 
she is fluent in English and Spanish; she reviewed the terms of the Benefit Plan with Reyes and other
employees, including a "Rights and Responsibilities" page, which explained that employees were
waiving any common-law claims by agreeing to participate in the benefit plan; and that Reyes signed
a form written in Spanish stating that he had read and understood the rules and stipulations of the
plan and would comply with them. This is some evidence that Reyes had actual knowledge that by
enrolling in the benefit plan, he was waiving his common-law rights. In response, Reyes produced
his own affidavit stating he can neither read nor write English and no one ever explained the benefit
plan to him in English or Spanish. This conflicting summary judgment evidence creates a fact issue
regarding actual knowledge of waiver. Summary judgment was therefore improper on the basis of
waiver. 

 We must now consider whether it is possible to ratify such a defective agreement, and if so,
whether Reyes did ratify it, because ratification was an independent basis for summary judgment on
which S&P and Guerrero moved. Ratification is the adoption or confirmation, by one with
knowledge of all material facts, of a prior act that did not then legally bind that person and which that
person had the right to repudiate. Vessels v. Anschutz Corp., 823 S.W.2d 762, 764 (Tex.
App.-Texarkana 1992, writ denied). Because ratification is an affirmative defense, it is the
defendant's burden to offer proof on each element of the defense. Montgomery v. Kennedy, 669
S.W.2d 309, 310-11 (Tex. 1984). As we are dealing with a summary judgment motion, S&P and
Guerrero had the burden to plead and conclusively prove each element of that defense. See City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d at 678.

 Regarding whether it is possible to ratify a liability waiver that relieves a party, in advance,
of liability for its own negligence and that is defective for failing to meet the fair notice
requirements, we conclude that such a defective liability waiver may be ratified where it is done with
full knowledge of all pertinent facts. The purpose behind fair notice requirements, as the name
implies, is to ensure that the executing party has fair notice of what he is executing. Thus, as stated
previously, the fair notice requirements do not apply where the signatory's actual notice or
knowledge of the indemnity or release is shown. See Dresser Indus., Inc. v. Page Petroleum, Inc.,
853 S.W.2d at 508 n.2 (citing Cate v. Dover Corp., 790 S.W.2d at 561). Therefore, an employee
who has executed a liability waiver that is defective for failing to meet the fair notice requirements
is in the same position as if he had never signed the release, unless he had actual knowledge of the
release's provisions. Ratification in these circumstances can satisfy the purpose behind the fair
notice requirements only if the notice which we require be given an employee at the waiver stage be
shown to exist at the ratification stage in the form of full knowledge of all of the pertinent facts.

 Our decision here is guided by Leonard v. Hare, 161 Tex. 28, 336 S.W.2d 619 (1960). In
Leonard, the employer carried a voluntary compensation policy for those employees who were not
covered by workers' compensation. While in the hospital, about a month after the injury, the
employee signed an acceptance of the compensation benefits and a release of his employer from
common-law liability. The insurance company adjuster testified that he fully explained to the
employee the terms of the policy and the nature of his rights under the law. The employee testified
that he was not mentally capable of understanding the consequences of his act; that he did not receive
a copy of the instrument and had never seen it since; that while the company did pay his hospital bills
and he accepted and cashed weekly compensation checks for fourteen months, he immediately
ceased cashing the checks, and returned those that had been delivered to him, when his lawyer
advised him of his right to sue his employer for damages at common law. See id. at 620. The
employer contended that the employee was bound by the release of his common-law action and
election to accept voluntary compensation benefits when he signed and ratified by writing for such
payments and by accepting, endorsing, and cashing weekly compensation payments, each of which
showed on its face to have been tendered in payment of such voluntary compensation benefits. See
id. The Texas Supreme Court found that the actions of the employee in accepting payments did not
constitute ratification as a matter of law because the actions did not establish "that at the time of
accepting this compensation [the employee] was in possession of and acquainted with all of the facts
or that as a matter of law he knew his rights and privileges to accept or reject the benefits under the
voluntary compensation policy or to sue his employer at common law or to release him from
liability." Id. at 621. Without knowledge of those facts pertaining to his rights, ratification did not
occur. 

 Reyes is in exactly the same position as was the plaintiff in Leonard. Because of the fact
issue as to the validity of the waiver, summary judgment that he lost his common-law rights in their
entirety at the time he accepted and retained payment for medical expenses and disability payments
was improper. S&P's and Guerrero's summary judgment proof of ratification is that Reyes accepted
and retained payment for medical expenses and disability payments after having previously signed
the liability waiver. This evidence is insufficient to satisfy the summary judgment burden of proof
on knowledgeable ratification. S&P and Guerrero have failed to show any evidence that at the time
Reyes accepted plan benefits, he did so with the knowledge he had common-law rights that he would
waive by accepting such benefits. We cannot infer Reyes' knowledge from his having signed the
release on his initial employment, because to do so would render the fair notice requirements
meaningless. The estoppel argument fails for the same lack of knowledge on Reyes' part. See
Rourke v. Garza, 530 S.W.2d 794, 803 (Tex. 1975) ("It is essential to the application of the doctrine
of estoppel that the person claimed to be estopped have had knowledge of all material facts at the
time of the conduct alleged to constitute the basis of the estoppel."). 

 Having shown that the liability release at issue here was unenforceable as a matter of law,
and that S&P and Guerrero have failed to satisfy their burden of proof for summary judgment on
their claims of ratification and estoppel, we conclude the trial court erred in granting summary







judgment. We reverse the judgment and remand this cause for further proceedings consistent with
this opinion.



 William J. Cornelius*

 Justice


Date Submitted: May 29, 2002

Date Decided: June 27, 2002


Publish


*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.
1. Although the Cate court only expressly addressed the actual knowledge of the party against
whom the provision is to be enforced and the conspicuousness of the provision in question, see Cate
v. Dover Corp., 790 S.W.2d 559, 560 (Tex. 1990), the Dresser court appears to have broadened the
"actual knowledge" exception to cover both the express-negligence and conspicuousness
requirements. See Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993).